**Hugh A. O'NEILL and Elizabeth O'Neill, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. C 67–53.**

United States District Court
N. D. Ohio, E. D.

Feb. 12, 1968.

W. Dean Hopkins, McDonald, Hopkins & Hardy, Cleveland, Ohio, for plaintiffs.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAMBROS, District Judge.

The plaintiff-taxpayers (hereinafter referred to in the singular) have sued in this court for refund of federal income taxes paid for the fiscal year ending January 31, 1966, in the amount of $2164.69, with interest at 6% from July 15, 1966. In essence, plaintiff's claim is that he should have paid his income tax as an employee-stockholder, not as a partner of Drs. Hill & Thomas Co.

This matter has been submitted to the Court for a decision on the merits based on stipulated facts. Oral argument was waived by both the taxpayer and the United States.

## FINDINGS OF FACT

Since the parties have stipulated most of the facts, and to avoid encumbering

the record, only a brief summary of the facts will be set out here.

The plaintiff is a duly licensed medical doctor under Ohio law.

Drs. Hill & Thomas Co. is an organization which provides radiological services to hospitals and to individual patients.

Plaintiff is one of approximately fourteen medical doctors who are employed on the staff of Drs. Hill & Thomas Co.

Drs. Hill & Thomas Co. has established contractual arrangements at five major hospitals, and, in addition to the hospital sites, maintains three separate offices for diagnostic X-ray work and therapy.

Outlets of the organization are located from Berea on the west to Painesville, Ohio, on the east.

Plaintiff is a director and stockholder of Drs. Hill & Thomas Co.

Drs. Hill & Thomas Co. is duly authorized and licensed as a professional association under the Ohio Revised Code, Sec. 1785.01 et seq.

The Court specifically finds that the principal purpose in changing the form of the organization from partnership to corporate status was the non-tax "business purpose" of controlling a sizeable and unwieldy organization (plaintiff's deposition, pp. 11 and 31).

## CONCLUSIONS OF LAW

Before delving into the legal issues presented by the case, the Court will briefly outline the statutory scheme of the Ohio Professional Association law. Briefly, the purpose of the statute is to permit professional associations to incorporate. In this regard, Ohio Revised Code, Sec. 1785.08 incorporates by reference the whole body of Ohio business corporation law which does not conflict with the provisions of the Professional Association chapter.

There are, however, differences between the ordinary business corporation and the professional association. The principal difference is that only licensed doctors can be stockholders of the professional association. Ohio Revised Code,

Secs. 1785.02, 1785.05, 1785.07. A second difference is that services can only be rendered by licensed doctors or by personnel supervised by licensed doctors. Ohio Revised Code, Sec. 1785.03. The purpose of this is to protect the public from receiving medical services from unlicensed persons who are in addition not subject to the restrictions of medical ethics.

Critics of this form of organization claim a third difference; namely, that Ohio professional associations lack limited liability of shareholders, a hornbook law requirement of corporate status. As noted above, the Ohio Professional Association laws incorporate the whole body of Ohio corporation law except insofar as this conflicts with the provisions of the Professional Association chapter itself. Normally, of course, shareholders are not subject to personal liability for claims against the corporation, and the general rule with respect to partnership is that each partner is liable for claims against the partnership. The assertion of these critics is that Section 1785.04, Ohio Revised Code, conflicts with the general corporation law providing for limited shareholder liability, and thereby renders shareholders of professional associations personally liable for claims against the corporation.

Section 1785.04 provides that the Ohio Professional Association laws " * * * do not modify any law applicable to the relationship between a person furnishing professional service and a person receiving such service, including liability arising out of such professional service."

In determining this question of whether professional associations have limited liability of shareholders, the Court is without the aid of any decision of the Ohio courts. It appears that no Ohio court has had occasion to construe this section of the Ohio Revised Code.

One commentator, examining a similar Georgia provision, asserts that the effect of this section is to continue the mutual agency and unlimited liability which characterizes partnerships. Boris Bitt-

ker, "Professional Associations and Federal Income Tax: Some Comments and Questions." 17 Tax Law Review, 1 at pp. 10–11 (1961).

Two Ohio commentators, however, conclude, on the basis of the plain language of the statute and on the basis of the probable legislative intent, that this section does not alter the corporate rule of limited liability of shareholders. It merely reaffirms personal liability for the person or persons who actually furnish the professional services. Z. Cavitch, Ohio Corporation Law, (1967) p. 590. William J. Vesely, "The Ohio Professional Association Law," 13 W. Res.L.Rev. 195 (1962) at p. 203. This court concurs with the Ohio commentators that the shareholders of Ohio professional associations have limited liability.

■ The Court has carefully reviewed the Professional Association chapter of the Ohio Revised Code. The Court is unable to find any material differences between professional associations and ordinary business corporations other than those mentioned above. The Court concludes that Drs. Hill & Thomas Co. should be regarded as a corporation under Ohio law. Cavitch, supra, p. 589. Dunkel, "Professional Corporations," 22 Ohio St.L.J. 103 (1961).

There is essentially only one issue in this case, the validity of Treas.Reg., Sec. 301.7701–2(h). The Court, therefore, will now examine the statutory, regulatory, and judicial background of the regulation.

The Treasury Regulations under Internal Revenue Code, Sec. 7701 take the following form. Regulations, Sec. 301.-7701–1 deal with the Treasury's interpretation of the statutory term "person." Section 301.7701–2 of the Regulations deals with elaboration by the Commissioner of his interpretation of the statutory term "association." This latter term is the category under which an organization must fall, according to the Government's interpretation, to be entitled to tax treatment as a corporation.

Regulation, Sec. 301.7701–2 is divided into two distinct parts. Subsections (a–g) deal generally with the standards and qualifications which an organization striving for tax treatment as a corporation must meet. The four principal tests are limited liability, free transferability of interests, continuity of life, and centrality of management.

Subsection (h) is reserved for professional service organizations alone. It employs basically the same four tests to determine whether a professional association is a corporation or a partnership for tax purposes. In addition, however, it imposes further conditions which the organization must also meet in order to be classified as a corporation for tax purposes. Only professional service organizations are subject to Subsection (h) and all other organizations which desire corporate tax treatment need only pass the general requirements of Subsections (a–g).

The relevant statutes which the regulations in question purport to construe are as follows:

"§ 7701(a) (1) Person. The term 'person' shall be construed to mean and include an individual, a trust, estate, partnership, association, company or corporation.

(2) Partnership and partner. The term 'partnership' includes a syndicate, group, pool, joint venture, *or other unincorporated* organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; * *."
(Emphasis supplied.)

The taxpayer's position is that an organization which meets the state law requirements of a corporation should, for federal income tax purposes, be classified as a corporation, unless it lacks a "business purpose" under the judicial doctrine of Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). Therefore, since Drs. Hill & Thomas Co. is characterized as a corporation under

Ohio law, and since it has a "business purpose," Drs. Hill & Thomas Co. arguably should be taxed as a corporation.

As a matter of statutory interpretation, according to the taxpayer's position, Congress has clearly indicated its intent with respect to abuse of the corporate form through several highly particularized and articulated statutory sections; for example, the reasonable salary limitation, the collapsible corporation provisions, the person holding company tax, the accumulated earnings tax, etc. Section 7701 is apparently not intended as a regulatory provision but serves only a broad definitional or taxonomical function. Furthermore, the plaintiff suggests that any attempt by the Treasury through regulation or otherwise to tax an incorporated entity as a partnership (on any other theory but the "business purpose" test) runs directly contrary to the language of Section 7701(a) (2) and must be stricken as beyond the statutory purpose.

The Commissioner, of course, argues that Treas.Reg., Sec. 301.7701–2(h) is a valid interpretative regulation, and that applied to Drs. Hill & Thomas Co. under the Ohio Professional Association law, the proper tax treatment would be as a partnership. The Court agrees with the Government's position insofar as its conclusion that Drs. Hill & Thomas Co. would be taxed as a partnership if Treas. Reg., Sec. 301.7701–2(h) were validly applied. The issue, then, is whether the regulation is valid.

Regulations are not entitled to equal weight before the courts. A court has greater freedom when passing on an interpretative rule than a legislative one. In the case of an interpretative rule, the legislature has not delegated power to an agency to make a rule which is binding upon the courts. An interpretative regulation does not prevent a reviewing court from substituting its judgment on questions of desirability or wisdom. "The law is embodied in the statute and the Court is free to interpret the statute as it sees fit." 1 Davis, Administrative Law, 5.05 (1958). Treas.Reg., Sec. 301.7701–2(h) is an interpretative regulation.

It is true, however, that interpretative regulations are often accorded special weight in the courts as an expert interpretation of the Government's position. The considerable weight ordinarily given interpretative Treasury Regulations is founded on three basic rationales: (1) legislative reenactment, (2) a long-standing administrative practice or interpretation, and (3) contemporaneous construction by an agency of a statutory term. Mitchell Rogovin, "The Four R's: Regulation, Ruling, Reliance, and Retroactivity." 43 Taxes 156 (1965).

As to statutory reenactment, the Court is aware of the fact that Congress periodically considers the possibility of statutory change in light of administrative and judicial rulings, and that the language of Section 7701(a) (2) has remained more or less static for several decades. In examining the legislative history of the section, however, the Court is unable to find where Congress ever specifically addressed itself to this particular subject or examined in this statutory context even the broad issues presented in this case.

Moreover, if legislative silence expressed by the constant statutory language of Section 7701(a) (2) is susceptible to an inference favorable to the Government here, it must be considerably weakened by the dearth of judicial support for the Treasury's position. In fact so far as the Court has determined, there are no cases in which a corporation under state law was in fact found taxable as a partnership except by way of the "business purpose" rule. The Treasury cites many cases in which non-corporate business forms were treated for tax purposes as corporations although state tests for corporate status were not met for various reasons, but none support the position taken in this case. Conversely, in the only judicial determination to date squarely challenging the regulations per-

364

tinent to this case the Court invalidated them. Empey v. United States, 272 F. Supp. 851 (Colo.Dist.1967).

█ A second rationale under which interpretative regulations are given weight by the courts is that of a long-continued administrative policy. With respect to professional associations, the Government's policy cannot be characterized as long standing or consistent. In Pelton v. Commissioner of Internal Revenue, 82 F.2d 473 (7th Cir. 1936), the Government argued and prevailed on a theory that a group of doctors operating in the form of a trust resembled a corporation and, therefore, should be taxed as a corporation even if not a corporation under state law. However, the Government later took the view, which did not prevail in Court, that a group of doctors which was not permitted to incorporate under state law could not qualify as a corporation for tax purposes even though its structure and mode of operation closely resembled that of a corporation. United States v. Kintner, 216 F.2d 418 (9th Cir. 1954); Galt v. United States, 175 F.Supp. 360, 361 (Tex.1959). The Treasury took this position as late as 1964 in Foreman v. United States, 232 F.Supp. 134 (Fla.1964), which the taxpayer won. After losing the *Galt* case, the Treasury Department deleted its own Example (1), which coincided with the facts of the *Galt* case. Treas. Reg., Sec. 301.7701–2(g), Example (1) (1960), deleted by T.D. 6797, 1965–1, Cum.Bull. 553. Then in 1965 the Government again changed its position with a new set of regulations denigrating the importance of state law and making a sharp regulatory distinction between professional service organizations and all other organizations with respect to requirements for corporate tax status.

The Court also is convinced that the contemporaneous construction rationale, which may give weight to interpretive regulations, is inapplicable to this case.

It therefore appearing to the Court that the regulation at issue is not entitled to special weight, the Court must exercise its independent judgment as to the persuasiveness of the regulation.

█ The effect of this regulation is to set up more stringent standards of corporate tax treatment for professional service organizations than for all other kinds of organizations. This court is in accord with Empey v. United States, supra, in concluding that there is no support for this discrimination either in the cases or by reason of statutory interpretation of the Internal Revenue Code. Moreover, as a matter of tax policy, the Court does not see any factual or legal characteristics which would justify different tax treatment of closely held professional service organizations, on the one hand, and closely held non-professional service organizations, on the other hand. "The fallacy of [The Treasury's] argument is readily apparent when one considers the large number of corporations presently existing in our economy whose primary income is earned solely from the personal service of employees. The corporate tax status of businesses engaged in advertising or promotion, investigation, sales, contract janitorial or secretarial service, to name a few, has not been seriously questioned to this court's knowledge." Foreman v. United States, supra, 232 F.Supp. p. 137.

The Court holds that Treas.Reg., Sec. 301.7701–2(h) is not valid and will not be given effect. The discrimination perpetuated in the regulation is not supported by the statute, judicial precedent, or sound tax policy. In short, the regulation is an instance of administrative overreaching.

█ In addition, the taxpayer challenges the validity of all the regulations under Internal Revenue Code, Sec. 7701 (a) (2) as well as the specific subsection aimed at professional service organizations. The taxpayer contends that the "business purpose" test is the only valid ground on which the Government can deny corporate tax treatment to an entity

entitled to corporate status under state law. However, the Court does not reach this issue because it finds that Drs. Hill & Thomas Co. does in fact meet the tests set out in the general regulations of Treas.Reg., Sec. 301.7701–2(a– f).

The Court orders judgment rendered for the plaintiff in the sum of $2164.69, with interest at 6% from July 15, 1966.