SOUTH HIGH DEVELOPMENT, LTD., APPELLANT, *v.*
WEINER, LIPPE & CROMLEY CO., L.P.A., ET AL., APPELLEES.

[Cite as South High Development, Ltd. *v.*
Weiner, Lippe & Cromley Co., L.P.A. (1983), 4 Ohio St. 3d 1.]

(No. 82-488—Decided March 9, 1983.)

*Messrs. Twyford & Donahey* and *Mr. William A. Clark,* for appellant.
*Messrs. Plymale, Chieffo & Ball* and *Mr. Dominic J. Chieffo,* for appellee
Jerry L. Lippe.
*Edward V. Miller Co., L.P.A., Mr. Edward V. Miller* and *Mr. James A. Saad,* for appellee William R. Cromley.

*Per Curiam.* The issue presented in this case is whether Section 4, Rule III of the Supreme Court Rules for the Government of the Bar of Ohio im-

1

poses personal liability upon the individual shareholders of a legal professional association for the debts of the association. We hold that such rule does so impose personal liability upon the individual members of a legal professional association and, therefore, reverse the court of appeals.

The facts of this appeal, in brief, are that on September 18, 1974, appellant, South High Development, Ltd., entered into a lease agreement with Weiner, Lippe & Cromley Co., L.P.A., a legal professional association. The lease was for office space located at 505 South High Street in Columbus. The lease agreement was signed by Jerry Weiner on behalf of the legal professional association. During the course of the lease, the appellees vacated the space at 505 South High Street. Appellant brought this action for breach of the lease agreement. Appellant sought lost rent from not only the L.P.A., but also Jerry Weiner, Jerry L. Lippe, and William R. Cromley, individually, as shareholders of the L.P.A. The court of common pleas dismissed the individual defendants, in effect holding that the lease was solely a corporate undertaking on the part of the L.P.A. Subsequently, the court entered judgment on behalf of the appellant against the corporate defendant, the L.P.A.

Upon appeal, the court of appeals affirmed the trial court's decision dismissing the individual defendants. Prior to the appeal, one individual defendant, Weiner, voluntarily paid his pro rata portion of the amount owed and, consequently, is not included in this appeal.

The appellant did not premise its argument upon the basis that the lease itself created any liability on the part of the individual shareholders. Rather, the appellant proceeded on the theory that the individual members of this legal professional association were liable under Section 4, Gov. R. III. This rule reads, in pertinent part:

"The participation by an individual as a shareholder of a legal professional association shall be on the condition that such individual shall, and by such participation does, guarantee the financial responsibility of the association for its breach of any duty, whether or not arising from the attorney-client relationship."

It was argued by appellees in the court of appeals, and the court agreed, that principles of corporate law would preclude imposing individual liability on the shareholders of an L.P.A. Such argument and decision were based upon the approach that imposing liability upon the individual partners of the professional association via Section 4, Gov. R. III, would violate Section 3, Article XIII of the Ohio Constitution. This constitutional provision reads, in part:

"Dues from private corporations shall be secured by such means as may be prescribed by law, but in no case shall any stockholder be individually liable otherwise than for the unpaid stock owned by him or her. * * *"

It is true that Section 3, Article XIII does generally provide limited liability, the "corporate veil," for its stockholders and, as such, the limited liability so provided by the Constitution for shareholders of private corporations may not be varied by the General Assembly or by this court. However,

such constitutional provision relates to private corporations, not professional corporations as here. Traditionally, there was a distinction between private corporations and professional corporations. A private corporation could not practice a learned profession. See, *e.g., State, ex rel. Bricker,* v. *Buhl Optical Co.* (1936), 131 Ohio St. 217 [5 O.O. 562]; 1 Fletcher, Cyclopedia of Private Corporations 425, Section 97. This difference, or distinction, is set forth in the Ohio Revised Code. R.C. 1701.03 provides, in pertinent part, that "[a] corporation may be formed for any purpose or purposes, other than for carrying on the practice of any profession * * *." However, the latter part of this section gives recognition to the fact that there may be later enacted provisions specifically providing for "a designated class of corporations."

The distinction between a private and professional corporation may be reasonably discernible when one looks at their respective purposes. A professional corporation is organized in order to carry out or practice a profession. On the other hand, a private corporation's sole purpose is to accumulate capital so that the owners, those contributing capital, may get a return on their capital. Thus, it may reasonably be concluded that the rationale behind the constitutional protection for shareholders applies only toward private corporations and not professional ones. The shareholders of a professional corporation, whether legal, medical, or other, will be the professionals who actually practice the profession. However, the shareholders of a private corporation will in most instances not be employees of the corporation. Therefore, there is a logical need for shareholders of private corporations to be insulated from corporate debts since they will have no practical participation in the management of the corporation. The shareholders of the professional corporation will have direct contact with the running of the corporation, so limited liability is not necessary for them.

Accordingly, the corporate entity with which we are dealing here, that of an association of individual attorney-shareholders for the purpose of practicing law, is not such a corporate entity which is controlled by Section 3, Article XIII of the Ohio Constitution. Therefore, any statutes providing for such corporate entities, or rules of this court pertaining to any such entity, would not present a conflict with such constitutional provision.

There was no legal authorization in Ohio for a corporation to practice a profession until the passage of R.C. Chapter 1785, effective October 17, 1961, which authorized the creation of professional associations. Passage of this chapter permitted professionals such as accountants, attorneys, dentists and physicians, for the first time, to incorporate a professional association in Ohio. R.C. Chapter 1785 incorporates by reference the provisions of the General Corporation Law, R.C. Chapter 1701, to the extent that they do not conflict with the provisions of the new law.

One of the first efforts by an attorney to incorporate a legal professional association culminated in *State, ex rel. Green,* v. *Brown* (1962), 173 Ohio St. 114 [18 O.O.2d 361]. Pursuant to the provisions of R.C. Chapter 1785, Green, an attorney, sought to incorporate two professional associations for the pur-

pose of engaging in the practice of law. When the articles of incorporation which he tendered to the Secretary of State were refused, Green filed a mandamus action in this court to require the Secretary of State, Brown, to accept the articles for filing. In the syllabus of this case, the court held:

"1. The authority to admit to the practice of law is inherent in the judicial branch of government.

"2. The authority is exercised in Ohio by the Supreme Court of Ohio.

"3. Rule XIV of the Rules of Practice of the Supreme Court of Ohio provides that only natural persons may be admitted to the practice of law in Ohio."

Thus, in *Green,* it was held that statutes such as R.C. Chapter 1785 do not authorize the practice of law "by corporations unless and until the Supreme Court by rule should recognize the right of a corporate entity to practice law." 6 Ohio Jurisprudence 3d 626, Attorneys at Law, Section 100.

We may take notice of the fact that an increasing number of the members of the legal profession had for some time been advocating the legal authority to practice the profession of law in a corporate form, based particularly on the premise that there were at the time certain definite tax advantages attendant thereto. There seems to have been some reservation on the part of this court to promulgate a rule in this regard, in that to do so may have the effect to lower the standards of responsibility owed by attorneys to their clients. However, in accord with the court's plenary power to oversee all phases of the conduct of the bar provided by Section 5(B), Article IV of the Ohio Constitution, this court did, in 1970, promulgate Rule XVII(B) of the Supreme Court Rules of Practice. This rule permitted professional associations to practice law in Ohio pursuant to R.C. Chapter 1785. Rule XVII(B) later became Gov. R. III, effective February 28, 1972.

The appellees argue that Gov. R. III of this court is contrary to the grant of rule-making authority of this court provided in Section 5(B), Article IV of the Ohio Constitution, in that this court's rule-making authority is limited to procedural rules, and that Gov. R. III is a rule imposing substantive duties.

It is true that this court may not, in its general procedural rule-making authority granted under Section 5 of Article IV, promulgate rules which abridge, enlarge, or modify a substantive right. However, the rule with which we are dealing within this review is not one of procedure, but one relating to the control of the practice of the profession of law. In *Green, supra,* this court stated, at page 115, in the opinion:

"The admission to the practice of law is inherent in the judicial branch of government, and the admission procedure in Ohio is determined by this court, both as a result of its inherent power and by virtue of statute (Section 4705.01, Revised Code). * * *"

This, indeed, is the embodiment of this plenary rule-making power granted by the Modern Courts Amendment contained in Article IV of the Ohio Constitution, specifically by Section 5(B), which states in part that:

"The Supreme Court * * * shall make rules governing the admission to

the practice of law and discipline of persons so admitted."

Since Rule III is a rule promulgated under the constitutional authority for the conduct of the bar, any law that is inconsistent therewith must fall. To the extent that R.C. 1785.04 is construed to provide limited liability to a shareholder of a legal professional association, it is inconsistent with Section 4, Gov. R. III, and is superseded by such rule.

In like manner, this court, in *Smith* v. *Kates* (1976), 46 Ohio St. 2d 263 [75 O.O.2d 318], held void, and of no further force and effect, R.C. 4705.02, providing for the disciplining of attorneys, because it conflicted with the Supreme Court Rules for the Government of the Bar of Ohio. The court cited as authority for such determination its prior decisions in *In re Thatcher* (1909), 80 Ohio St. 492, followed in *In re McBride* (1956), 164 Ohio St. 419 [58 O.O. 242].

We conclude that there are certain financial responsibilities of an individual attorney who becomes an attorney-shareholder of a legal professional association, and that such responsibilities have been clearly set forth within this court's Section 4 of Gov. R. III. Accordingly, we hold that acceptance of such responsibility is a condition assumed by the attorney-shareholder when he becomes a member of such corporation.

Based upon all of the above, we reverse the court of appeals, and remand this cause to the court of common pleas for further proceedings according to law.

*Judgment reversed and cause remanded.*

Celebrezze, C.J., W. Brown, Sweeney, Locher, Holmes, C. Brown and J. P. Celebrezze, JJ., concur.