THE STATE, EX REL. WISE, CHILDS & RICE CO., L.P.A. ET AL., *v.* BASINGER, JUDGE.

(No. 15-88-8—Decided October 18, 1988.)

*Kathleen E. Perry,* for relators.
*Michael E. Kirkendall,* for respondent.

*Per Curiam.* This is an action in prohibition wherein relators seek to prohibit respondent from entering and/or enforcing any orders against relators which require them to produce, deliver or surrender certain papers and documents. It is relators'

contention that neither relator is a party to the action in which the production, delivery or surrender of papers and documents is to be ordered. It is further contended by relator Wise & Associates Co., L.P.A. that the materials sought to be obtained are its personal property upon which it claims an attorney lien.

The complaint in the underlying action names Perry G. Wise and James W. Childs, individually, as parties. Wise and Childs were principals in relator Wise, Childs & Rice Co., L.P.A., and Wise is presently a principal in relator Wise & Associates Co., L.P.A.

A request for production of documents was directed to Wise individually. He responded thereto generally asserting that the documents were in the possession of the relator associations and not in his possession individually. We first note that, at a hearing herein, it was disclosed that respondent, Randall L. Basinger, has already entered his order. Since prohibition will lie only to prevent the commission of a future act, this action will be considered only as it relates to the enforcement of the order by respondent.

"The purpose of the writ of prohibition is to keep inferior courts or tribunals within the limits of their own jurisdiction * * *[.] [T]he sole question to be determined, so far as the ground for issuing the writ is concerned, is the jurisdiction of the inferior court * * *." (Footnotes omitted.) 67 Ohio Jurisprudence 3d (1986) 478, Mandamus, Procedendo & Prohibition, Section 172.

It is relators' contention that respondent is without jurisdiction over relators.

Legal professional associations are authorized under R.C. Chapter 1785 and Gov. Bar R. III.

While a legal professional association should be regarded as a corporation under Ohio Law (see *O'Neill* v. *United States* [N.D. Ohio 1968], 281 F. Supp. 359, 14 Ohio Misc. 61, 43 O.O. 2d 83), Section 4, Gov. Bar R. III imposes a duty upon a member of a legal professional association to guarantee the financial responsibility of the association for its breach of any duty, whether or not arising from the attorney-client relationship. See, also, *South High Development, Ltd.* v. *Weiner, Lippe & Cromley Co., L.P.A.* (1983), 4 Ohio St. 3d 1, 4 OBR 1, 445 N.E. 2d 1106.

In *South High Development, Ltd.* v. *Weiner, Lippe & Cromley Co., L.P.A.*, *supra*, the court stated:

"We may take notice of the fact that an increasing number of the members of the legal profession had for some time been advocating the legal authority to practice the profession of law in a corporate form, based particularly on the premise that there were at the time certain definite tax advantages attendant thereto. There seems to have been some reservation on the part of this court to promulgate a rule in this regard, in that to do so may have the effect to lower the standards of responsibility owed by attorneys to their clients. However, in accord with the court's plenary power to oversee all phases of the conduct of the bar provided by Section 5(B), Article IV of the Ohio Constitution, this court did, in 1970, promulgate Rule XVII(B) of the Supreme Court Rules of Practice. This rule permitted professional associations to practice law in Ohio pursuant to R.C. Chapter 1785. Rule XVII(B) later became Gov. [Bar] R. III, effective February 28, 1972." *Id.* at 4, 4 OBR at 3-4, 445 N.E. 2d at 1109.

In *First Bank & Trust Co.* v. *Zagoria* (1983), 250 Ga. 844, 845-846, 302 S.E. 2d 674, 675, 39 A.L.R. 4th

551, 553-554, we find the following concerning legal professional associations:

"The diligence of this court has been directed toward the assurance that the law practice will be a professional service and not simply a commercial enterprise. The primary distinction is that a profession is a calling which demands adherence to the public interest as the foremost obligation of the practitioner.

"* * *

"By enacting the professional corporation statute the legislature performed a useful and constitutional act. A professional corporation has numerous legitimate business purposes. By conducting a law practice through the structure of a professional corporation, its shareholders realize the advantages of more orderly business operations, greater ease in acquiring, holding and transferring property, and more continuity of its existence. Additionally, a professional corporation affords to its shareholders insulation against liability for obligations which do not arise as a result of a breach of a lawyer's obligation to his client or an act of professional malpractice. The shareholders of a professional corporation have the same insulation from liability as shareholders of other corporations with respect to obligations of a purely business and nonprofessional nature. However, the influence of the statute upon the professional corporation cannot extend to the regulation of the law practice so as to impose a limitation of liability for acts of malpractice or obligations incurred because of a breach of duty to a client.

"The professional nature of the law practice and its obligations to the public interest require that each lawyer be civilly responsible for his professional acts. A lawyer's relationship to his client is a very special one.

So also is the relationship between a lawyer and the other members of his or her firm a special one. When a client engages the services of a lawyer the client has the right to expect the fidelity of other members of the firm. It is inappropriate for the lawyer to be able to play hide-and-seek in the shadows and folds of the corporate veil and thus escape the responsibilities of professionalism."

While we hasten to state that there is no issue in this case to any lack of professionalism, we cite the above for the express purpose of indicating the continuing personal responsibility of attorneys who are members of legal professional associations.

In *South High Development, Ltd.* v. *Weiner, Lippe & Cromley Co., L.P.A., supra,* the court stated:

"The distinction between a private and professional corporation may be reasonably discernible when one looks at their respective purposes. A professional corporation is organized in order to carry out or practice a profession. On the other hand, a private corporation's sole purpose is to accumulate capital so that the owners, those contributing capital, may get a return on their capital. Thus, it may reasonably be concluded that the rationale behind the constitutional protection for shareholders applies only toward private corporations and not professional ones. The shareholders of a professional corporation, whether legal, medical, or other, will be the professionals who actually practice the profession. However, the shareholders of a private corporation will in most instances not be employees of the corporation. Therefore, there is a logical need for shareholders of private corporations to be insulated from corporate debts since they will have no practical participation in the management of the corporation. The share-

holders of the professional corporation will have direct contact with the running of the corporation, so limited liability is not necessary for them." *Id.* at 3, 4 OBR at 2-3, 445 N.E. 2d at 1108.

In *In re Florida Bar* (Fla. 1961), 133 So. 2d 554, 556, 4 A.L.R. 3d 375, 378-379, the court in considering a professional service corporation Act stated:

"* * * Traditionally, prohibition against the practice of a profession through the corporate entity has been grounded on the essentially personal relationship existing between the lawyer and his client, or the doctor and his patient. This necessary personal relationship imposes upon the lawyer a standard of duty and responsibility which does not apply in the ordinary commercial relationship. The noncorporate status of the lawyer was deemed necessary in order to preserve to the client the benefits of a highly confidential relationship, based upon personal confidence, ability, and integrity. If a means can be devised which preserves to the client and the public generally, all of the traditional obligations and responsibilities of the lawyer and at the same time enables the legal profession to obtain a benefit not otherwise available to it, we can find no objection to the proposal."

It is obvious from the foregoing that there was no intent in authorizing attorneys to incorporate to insulate the individual attorney from his professional relationship with his client. If those papers and documents came into the possession of the legal professional corporation it was only through the individual attorney.

Likewise any lien which attaches to the papers and documents is in favor of the attorney to secure payment for his legal services and not in favor of the legal professional association, which had no professional relationship with the client.

We conclude that respondent, by obtaining jurisdiction over the individual attorneys, has such jurisdiction as is necessary to order the production of the documents as sought.

We therefore further conclude that relators' prayer for a writ of prohibition must be denied.

*Writ denied.*

MILLER, P.J., COLE and SHAW, JJ., concur.