683 So.2d 545 (1996)
PORLICK, POLIQUIN, SAMARA, INC. and Robert A. Porlick, P.E., Appellants,
v.
Robert J. COMPTON, Appellee.
No. 96-61.
District Court of Appeal of Florida, Third District.
October 2, 1996.
Rehearing Denied December 18, 1996.
Ferdie and Gouz, and Ainslee R. Ferdie, Miami, for appellants.
Michel O. Weisz, Coral Gables, and Lee Katherine Goldstein, Miami, for appellee.
Before BARKDULL, JORGENSON and GODERICH, JJ.
GODERICH, Judge.
The plaintiffs, Porlick, Poliquin, Samara, Inc. and Robert A. Porlick [Porlick], appeal from an adverse summary judgment. We affirm.
On December 21, 1993, Robert A. Porlick sent a letter on Porlick, Poliquin, Samara, Inc. letterhead to Robert J. Compton of the law firm, Compton and Associates, P.A., confirming the terms of their agreement. The letter as returned to Porlick, after review and signature by Robert J. Compton, read, in pertinent part, as follows:
 Mr. Robert J. Compton
 Compton & Associates, P.A.
 117 Queen Christina Court
 Fort Pierce, Florida 34949
*546
 Re: Maryland Casualty Co. vs. Ocean
 Yachts Inc.
 90-14591(8) Broward
Dear Mr. Compton:
This is to confirm our agreement: That I am to be your consulting engineer in this matter, to explore the facts and to assist you in the technical areas. You represent defendant Ocean Yachts, Inc. My fee, payable by you to me, will be $150 an hour for investigating, researching, testing, preparing, conferring, and traveling; and if I am called to testify, $250 an hour for depositions to any party and for presence at court. An advance of $1200 is payable at this time. I do not charge for travel time to Dade County destinations, nor for incidentals such as secretarial time and telephone tolls. The Standard Conditions printed below are included in our agreement. You firmly agree to pay me in full, even if you yourself are disappointed in your financial expectations.
If this is incorrect or if I omitted anything, will you let me know at once? Please be sure to read the Standard Conditions below to make sure they are agreeable to you. Our company policy requires written authorization for services, so will you kindly sign a copy of this letter and return it to me with a check for $1200 payable individually to Robert A. Porlick?
 I agree and accept,
/s/ Robert J. Compton Pres.
 Mr. Robert J. Compton
 Yours truly,
 /s/Robert A. Porlick
 Robert A. Porlick, P.E.
Subsequently, Porlick and his corporation filed an action against Compton & Associates, P.A. and Robert J. Compton, individually, alleging that the parties had entered into the above agreement; that, pursuant to the agreement, Porlick had performed services as an electrical engineering expert and incurred costs; that, pursuant to the agreement, he rendered a statement and required payment; and that Robert J. Compton and his law firm failed to make payment for the amount owed, $23,293.46. In response, the defendants filed their answer and affirmative defenses, and the plaintiffs filed their answer to the affirmative defenses.
Thereafter, defendant Robert J. Compton filed a motion for summary judgment with a supporting memorandum and affidavit. Therein, he argued that he did not sign the contract in his individual capacity and that the complaint does not allege any facts that would give rise to individual liability on the basis of fraud or misuse of a corporation. On December 18, 1995, the trial court granted final summary judgment in favor of defendant Robert J. Compton and made, in pertinent part, the following findings of fact:
1. [I]t affirmatively appears that there are no material issues of fact in dispute.
2. It unambiguously appears on the face of the contract ... that only one entity entered into the contract with the Plaintiffs.
3. Defendant ROBERT J. COMPTON had submitted an affidavit in support of his motion for summary judgment that states that he entered into the contract ... in his representative capacity as the president of the corporate Defendant COMPTON & ASSOCIATES, P.A.
4. The Plaintiffs have failed to come forward with any facts, either in the complaint or affidavits, that could give rise to individual liability against ROBERT J. COMPTON, president of COMPTON & ASSOCIATES, P.A. for breach of the contract sued upon.
5. As a matter of law, Plaintiffs can not prevail on a breach of contract action against ROBERT J. COMPTON individually.
The plaintiffs' appeal follows.
The plaintiffs contend that the trial court erred by granting summary judgment in favor of Compton, as a matter of law, arguing that "the mere addition of descriptio personae to a signature does not exculpate the signatory party from responsibility." Manufacturers' Leasing, Ltd. v. Florida Dev. & Attractions, Inc., 330 So.2d 171, 172 (Fla. 4th DCA 1976). We agree with the plaintiffs recitation of the law but find that the case before us is factually distinguishable from Manufacturers' Leasing.
*547 In Manufacturers' Leasing, the Fourth District explained that "the [Florida] Supreme Court [had previously] stated that the addition of descriptio personae to an individual's name rendered him prima facie liable unless from a reading of the whole instrument an intent appears to bind only the principal." 330 So.2d at 172 (citing Falsten Realty Co. v. Kirksey, 103 Fla. 225, 137 So. 267 (1931)). The Fourth District then went on to hold that the guaranty contract sued upon specifically negated the president's execution of the lease guaranty contract in a representative capacity because it contained a provision stating that the obligations of the undersigned are joint and several and independent of the obligations of the lessee. Manufacturers' Leasing, 330 So.2d at 172; see also, Onderko v. Advanced Auto Ins., 477 So.2d 1026, 1027 (Fla. 2d DCA 1985)(holding that officer of lessee corporation who claimed that he had signed the lease in his representative capacity was joint and severally liable for breach of the lease agreement where the terms of the lease specifically stated that the "person [signing the lease] and the corporation... shall be jointly and severally liable for all rent ... due"); Central Nat'l Bank of Miami v. Muskat Corp. of Am., 430 So.2d 957 (Fla. 3d DCA 1983)(holding that corporate president who claimed that he had signed a guaranty in his representative capacity was liable on the guaranty where the guaranty, by its terms, contained provisions for individual liability).
In the instant case, we have examined the letter agreement as a whole and find that the intent appears to bind only the principal. First, we note that the heading on the letter agreement directs the letter to "Robert J. Compton" of "Compton & Associates, P.A." at the business address of Compton & Associates, P.A. Next, we disagree with the plaintiffs argument that the repeated use throughout the letter agreement of the words "you," "your," and "yourself" in reference to Robert J. Compton were meant to personally bind him. The words "you", "your," and "yourself" can properly be used to refer to Robert J. Compton in his representative capacity. Lastly and most importantly, unlike the contracts in Manufacturers' Leasing, Onderko, and Central National Bank of Miami, the letter agreement in this case does not contain any specific language subjecting the signor to joint and several liability in the event of a breach and does not explicitly indicate an intention for the signor to provide a personal guarantee for the debt.
On this basis, we must conclude that the plain and unambiguous language of the letter agreement, when read as a whole, clearly indicates that Compton & Associates, P.A., not Robert J. Compton, individually, hired Porlick and his corporation as an expert witness on behalf of its client. Therefore, we find that the trial court properly granted summary judgment in favor of Robert J. Compton, individually, where there were no genuine issues of material fact, and the defendant was entitled to summary judgment as a matter of law.
Lastly, we must address the question of whether even if the contract is only between the plaintiffs and Compton & Associates, P.A., should Robert J. Compton still be held personally liable for this debt by virtue of his being a member of The Florida Bar and a shareholder in a professional service corporation.
In 1961, the Florida Legislature enacted Chapter 61-64, known as "The Professional Service Corporation Act," so that professionals, who had traditionally practiced as partnerships, could obtain the federal tax benefits afforded corporations. Shortly after its enactment, the Florida Supreme Court, pursuant to its Constitutional responsibility to supervise admissions to the practice of law and the discipline of those admitted, authorized members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The Professional Service Corporation Act. In the Matter of the Fla. Bar, 133 So.2d 554, 555 (Fla.1961). The Florida Supreme Court explained how the professional service corporation would impact the attorney-client relationship:
Traditionally, prohibition against the practice of a profession through the corporate entity has been grounded on the essentially personal relationship existing between *548 the lawyer and his client, or the doctor and his patient.
. . . . .
As we read Chapter 61-64, implemented by the Rules that we hereafter announce, the highly personal obligation of the lawyer to his client is in no way adversely affected. The individual practitioner, whether a stockholder in a corporation or otherwise, will continue to be expected to abide by all the Rules and Canons of professional ethics heretofore or hereafter required of him. The corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical. As a matter of fact, the corporate entity itself will automatically come within the ambit of our jurisdiction in regard to discipline. In addition to the individual liability and responsibility of the stockholder, the corporate entity will be liable for the misprisions of its members to the extent of corporate assets.
In the Matter of the Fla. Bar, 133 So.2d at 556. Further, the Florida Supreme Court explained how the professional service corporation would operate:
As we read the subject statute and the implementing rules proposed ..., a corporation organized under the statute and rules will meet substantially the requirements of the aforementioned regulations of the Internal Revenue Service. The members will be associated together as stockholders. They will have as their objective the conduct of the affairs of the corporate entity with a division of profits. There will be continuity of life and centralization of management. There will be liability for corporate debts to the limit of corporate assets. Finally, there will be a modified form of transferability of interests.
In the Matter of the Fla. Bar, 133 So.2d at 556-57 (emphasis added).
Today, the Professional Service Corporation Act is found at Chapter 621, Florida Statutes (1995) and is implemented by Rule 4-8.6 of the Rules Regulating The Florida Bar.[1] Section 621.07, entitled "Liability of officers, agents, employees, shareholders, members, and corporation or limited liability company," provides that
[n]othing contained in this act shall be interpreted to abolish, repeal, modify, restrict, or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; provided, however, that any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control, while rendering professional service on behalf of the corporation or limited liability company to the person for whom such professional services were being rendered; and provided further that the personal liability of shareholders of a corporation, or members of a limited liability company, organized under this act, in their capacity as shareholders or members of such corporation or limited liability company, shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607 or a member-employee of a limited liability company organized under chapter 608. The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services.
§ 621.07, Fla. Stat. (1995)(emphasis added).
Based on the plain language of this statute, we must conclude, as the Florida Supreme Court did, that the Professional Service Corporation Act relieves professional *549 service corporation shareholders of personal liability for the ordinary business debts of the professional service corporation. In the Matter of the Florida Bar, 133 So.2d at 557.
Other jurisdictions have reached similar conclusions under like circumstances. See We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 65 N.Y.2d 148, 490 N.Y.S.2d 743, 745, 480 N.E.2d 357, 359 (1985)(holding that attorneys who were individual shareholders in a professional service corporation were not personally liable for rents due and owing under a commercial lease that named only the professional service corporation as tenant where "[t]he plain words of the statute, imposing personal liability only in connection with the rendition of professional services on behalf of the professional service corporation, cannot be defeated by a liberal construction which would include ordinary business debts within the definition of professional services"); Henderson v. HSI Fin. Servs., Inc., 266 Ga. 844, 471 S.E.2d 885, 886 (1996)(holding "that shareholders of professional corporations are not personally liable for corporate debts except by personal conduct"). But see South High Dev., Ltd. v. Weiner, Lippe & Cromley Co., 4 Ohio St.3d 1, 445 N.E.2d 1106, 1107 (1983)(holding that attorneys who were individual shareholders of a legal professional association were personally liable for the debts of the association where such liability was imposed by Section 4, Rule III of the Supreme Court Rules for the Government of the Bar of Ohio which states that participation as a shareholder in a legal professional association is conditioned upon the individual guaranteeing the financial responsibility of the association for its breach of any duty, whether or not arising from the attorney-client relationship.).
Affirmed.
BARKDULL, J., concurs.
JORGENSON, Judge (dissenting).
I respectfully dissent. In my view, the contract as executed imposed personal liability on Mr. Compton and, even were the contract to be interpreted as being between plaintiffs and Mr. Compton's professional association alone, Mr. Compton did not escape personal liability for this debt.
The relevant language of the contract bears repeating:
Dear Mr. Compton:
This is to confirm our agreement: That I am to be your consulting engineer in this matter, to explore the facts and to assist you in the technical areas. You represent defendant Ocean Yachts, Inc. My fee, payable by you to me, will be $150 an hour for investigating, researching, testing, preparing, conferring, and traveling; and if I am called to testify, $250 an hour for depositions to any party and for presence at court. An advance of $1200 is payable at this time. I do not charge for travel time to Dade County destinations, nor for incidentals such as secretarial time and telephone tolls. The Standard Conditions printed below are included in our agreement. You firmly agree to pay me in full, even if you yourself are disappointed in your financial expectations.

If this is incorrect or if I omitted anything, will you let me know at once? Please be sure to read the Standard Conditions below to make sure they are agreeable to you. Our company policy requires written authorization for services, so will you kindly sign a copy of this letter and return it to me with a check for $1200 payable individually to Robert A. Porlick?
I agree and accept,
 /s/ Pres.
 Mr. Robert J. Compton
 Yours truly,
 /s/
 Robert A. Porlick, P.E.
(emphasis added). Mr. Compton has claimed that by merely writing Pres. next to his signature on a signature line that lists him individually, under a letter addressed to him personally, with contract language that speaks of his personal obligation, he should escape individual liability. This position misconceives the law of both contracts and agency. In Bank of Miami v. Armenteros, 382 So.2d 1336 (Fla. 3d DCA 1980), the bank sued to recover on a collateral note executed by a corporation through its president and *550 allegedly personally guaranteed by the president and his wife. This court noted that
The ambiguity on the reverse side of the note appears in the addition of the word "President" after the signature above the typed language "Jose Armenteros." Parol evidence is admissible to explain an ambiguity appearing on the face of the note. Thus parol evidence should have been admitted to resolve the ambiguity.
To avoid personal liability by an agent, the agent must clearly indicate the understanding of the parties in the form of his execution of a contract or in the contract itself.
Id. at 1336-37. Because Mr. Compton failed to clearly indicate that he was not to be individually liable along with his law firm, he cannot avoid personal liability as an agent of the firm.
Next, even under the court's holding that the contract is between plaintiffs and Mr. Compton's professional association only, Mr. Compton should still be liable for the debt to the plaintiffs. At issue is the effect of the Professional Service Corporation Act, chapter 621, Florida Statutes, which provides in part that
Nothing contained in this act shall be interpreted to abolish, repeal, modify, restrict, or limit the law now in effect in this state applicable to the professional relationship and liabilities between the person furnishing the professional services and the person receiving such professional service and to the standards for professional conduct; provided, however, that any officer, agent, member, manager, or employee of a corporation or limited liability company organized under this act shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control, while rendering professional service on behalf of the corporation or limited liability company to the person for whom such professional services were being rendered; and provided further that the personal liability of shareholders of a corporation, or members of a limited liability company, organized under this act, in their capacity as shareholders or members of such corporation or limited liability company, shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607 or a member-employee of a limited liability company organized under chapter 608. The corporation or limited liability company shall be liable up to the full value of its property for any negligent or wrongful acts or misconduct committed by any of its officers, agents, members, managers, or employees while they are engaged on behalf of the corporation or limited liability company in the rendering of professional services.
§ 621.07, Fla. Stat. (1995)(emphasis added). Chapter 621 was enacted in 1961 so that professionals, who had traditionally practiced as partnerships, could obtain the federal tax benefits afforded corporations. This was achieved by imbuing professional service corporations ("PSCs") with major corporate attributes such as continuity of life, centralized management, free transferability of interests of ownership, and limited liability. See generally, James M. Grippando, Don't Take it PersonallyLimited Liability for Attorney Shareholders under Florida's Professional Service Corporations Act, 15 Fla. St. U.L.Rev. 279 (1987). From the outset, however, the Florida Supreme Court made it clear that the practice of law through PSCs is subject to the approval and conditions imposed by the Court under its constitutional mandate to supervise the discipline of attorneys:
[T]he responsibility which the Constitution imposes upon us to supervise admissions to the practice of law and the discipline of those admitted, necessarily requires an examination by this Court into any proposal that directly affects these two constitutional functions. Enabling action by this Court is therefore an essential condition precedent to authorize members of The Florida Bar to qualify under and engage in the practice of their profession pursuant to The 1961 Act.
In Re Florida Bar, 133 So.2d 554, 555 (Fla. 1961). The Court approved amendments to the integration rule and code of ethics to allow attorneys to practice as PSCs but, in *551 doing so, admonished that "[t]he corporate entity as a method of doing business will not be permitted to protect the unfaithful or the unethical." Id. at 556.
Section 621.07 has received scant notice in appellate opinions. For PSCs in general, the provision of section 621.07 that
the personal liability of shareholders of a corporation, or members of a limited liability company, organized under this act, in their capacity as shareholders or members of such corporation or limited liability company, shall be no greater in any aspect than that of a shareholder-employee of a corporation organized under chapter 607 or a member-employee of a limited liability company organized under chapter 608
purports to relieve PSC shareholders of liability for the ordinary business debts of the PSC. However, because the corporate status imparted by this section may not protect unfaithful or unethical attorneys, a different result should apply in this case. Specifically, I believe that an attorney who engages the services of another professional on behalf of his firm should not then escape the debt for those services behind the veil of his professional association. Other jurisdictions have reached similar conclusions under like circumstances. See South High Dev., Ltd. v. Weiner, Lippe & Cromley Co., 4 Ohio St.3d 1, 445 N.E.2d 1106 (Ohio 1983)(holding attorney shareholders liable on office lease executed by PSC only under Ohio bar rule, despite PSC statute limiting liability); Infosearch, Inc. v. Horowitz, 117 Misc.2d 774, 459 N.Y.S.2d 348 (N.Y.Civ.Ct.1982) (attorney PSC shareholders liable for business debts incurred ancillary to the rendering of professional services).
I would reverse.
NOTES
[1] In 1996, the Florida Supreme Court amended the name of Rule 4-8.6 of the Rules Regulating the Florida Bar from "Professional Service Corporations" to "Authorized Business Entities." In re Amendments To Rules Regulating The Florida Bar, 677 So.2d 272 (Fla.1996).