979 So.2d 973 (2008)
MacKENDREE & CO., P.A. and Ronald O. MacKendree, Appellants,
v.
PEDRO GALLINAR & ASSOCIATES, P.A. and MacKendree & Gallinar, LLP, Appellees.
No. 3D07-1478.
District Court of Appeal of Florida, Third District.
February 6, 2008.
*974 Ross and Girten and Lauri Waldman Ross and Theresa L. Girten, Miami; Sandler & Sandler and Martin Sandler, Miami, for appellants.
James W. Cusack, Miami; Woodbury & Santiago, P.A. and Michael P. Woodbury and Robert P. Santiago, Miami, for appellees.
Before WELLS, ROTHENBERG, and SALTER, JJ.
ROTHENBERG, J.
The defendants, MacKendree & Co., P.A. ("MacKendree") and Ronald O. MacKendree ("Ronald MacKendree") (collectively, "the MacKendree defendants"), appeal from a final order granting summary judgment in favor of the plaintiffs, Pedro Gallinar & Associates, P.A. ("Gallinar") and MacKendree & Gallinar, LLP (collectively, "the Gallinar plaintiffs"). We reverse.
In 2003, Ronald MacKendree decided to reduce his workload and sell his accounting practice to Gallinar. The Gallinar accounting firm was located in a neighboring office and headed by one of Ronald MacKendree's acquaintances. MacKendree and Gallinar executed a partnership agreement and a contemporaneous asset purchase agreement to effectuate the transfer. Both agreements were signed by MacKendree and Gallinar through agents acting in their representative capacities. However, two letters of clarification regarding both agreements were subsequently executed and signed by Ronald MacKendree and Gallinar's president without specifically stating that they were signing these clarifications in their representative capacities.
The partnership agreement took effect on October 1, 2003. It created MacKendree & Gallinar, LLP to ease the transfer of MacKendree's practice into Gallinar's control. The MacKendree and Gallinar partnership ended on December 1, 2005. The express intention of the parties was that Ronald MacKendree would retire[1] by December 1, 2005, thus completing the turnover to Gallinar. In the two years leading up to the final transfer, MacKendree and Gallinar shared office space, operating under the name MacKendree & *975 Gallinar, LLP, but they maintained separate incomes and practices in all other respects.
The asset purchase agreement governed the sale of most of MacKendree's clients (a limited number of clients were excluded from the deal and reserved for continued service by Ronald MacKendree). The price was set at ninety percent of MacKendree's 2004 billings,[2] with a $50,000 deposit (paid in two annual installments of $25,000), and the remainder payable in monthly installments beginning on the closing date, December 1, 2005.
In November 2005, Ronald MacKendree sent a letter to his clients explaining that he was turning his practice over to Gallinar. Thereafter, Ronald MacKendree packed up his personal belongings and moved out of the office. Gallinar made the two $25,000 down payments as scheduled. Ronald MacKendree ceased working full-time, but returned periodically at Gallinar's request to perform per diem work. The per diem services rendered by Ronald MacKendree for Gallinar were not mentioned within either of the two agreements. Subsequently, Gallinar fell behind on the payment schedule outlined in the asset purchase agreement. In March 2006, Gallinar paid $28,500, which MacKendree accepted, although at the time, an additional $12,500 in contract payments (under the asset purchase agreement) was allegedly unpaid and outstanding.
The conflict between the parties came to a head when Gallinar terminated the employment of one of MacKendree's longtime employees, Diane Annesser. After Annesser was terminated, Ronald MacKendree became concerned with Gallinar's handling of his former business and confronted Gallinar's president. As a result, Gallinar terminated Ronald MacKendree's per diem services, and according to Ronald MacKendree, Gallinar failed to compensate him for some of his per diem fees and owed MacKendree for other amounts receivable and contract payments. Shortly thereafter, Ronald MacKendree resumed business with some of the clients previously sold to Gallinar.
On April 25, 2006, MacKendree sent a formal demand for overdue contract payments to Gallinar. Three days later, the Gallinar plaintiffs filed the instant lawsuit against the MacKendree defendants. The Gallinar plaintiffs sued the MacKendree defendants for breach of the asset purchase agreement, breach of the implied covenant of good faith, rescission of the asset purchase agreement, civil conspiracy, and breach of the partnership agreement. The MacKendree defendants counterclaimed for unpaid per diem fees, contract payments, and other amounts payable to MacKendree.
The MacKendree defendants moved for summary judgment on their counterclaims and all of the Gallinar plaintiffs' allegations, arguing in part that Ronald MacKendree could not be held personally liable for breach of either of the two agreements. The trial court, however, denied the motion brought by the MacKendree defendants. The Gallinar plaintiffs then moved for partial summary judgment on Count IX of the complaint, which alleged breach of the partnership agreement. The trial court granted the Gallinar plaintiffs' motion, finding as a matter of law that MacKendree breached the partnership agreement and that Ronald MacKendree did not retire. The trial court later granted the Gallinar plaintiffs' motion for dismissal of *976 all remaining claims and counterclaims, finding them moot, and issued a final judgment ordering the MacKendree defendants to return the $50,000 deposit paid by Gallinar plus $27,868.84 in interest.
Our review of the trial court's order granting summary judgment is de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla. 2000); Sheikh v. Coregis Ins. Co., 943 So.2d 242, 243 (Fla. 3d DCA 2006). Summary judgment may only be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Volusia County, 760 So.2d at 130. The MacKendree defendants argue that the order on appeal must be reversed because: (1) Ronald MacKendree cannot be held personally liable; (2) unresolved issues of fact preclude summary judgment against MacKendree for breach of the partnership agreement; and (3) the trial court erred in dismissing the MacKendree defendants' independent counterclaims as moot. We agree.

Ronald MacKendree Cannot Be Held Personally Liable
We review the two agreements as a whole to determine whether the parties intended to bind their principal businesses alone, or also the signing agents in their individual capacities. Falsten Realty Co. v. Kirksey, 103 Fla. 225, 137 So. 267, 269 (1931); Porlick, Poliquin, Samara, Inc. v. Compton, 683 So.2d 545, 547 (Fla. 3d DCA 1996). A review of the instant agreements reveals that the parties intended to bind the businesses alone, not the individual agents. Both agreements define the parties as MacKendree & Co., P.A. and Pedro Gallinar & Associates, P.A., not Ronald MacKendree, or any other agent of these firms. The individuals who negotiated and signed the agreements did so on behalf of their separate firms, acting in their representative capacities.
The Gallinar plaintiffs argue that the letters of clarification executed after the original agreements support the trial court's summary judgment against Ronald MacKendree individually. We disagree because this interpretation does violence to Florida's requirement that the agreements must be considered together, as a whole. The Gallinar plaintiffs rely on Central National Bank of Miami v. Muskat Corp. of America, Inc., 430 So.2d 957 (Fla. 3d DCA 1983), as authority supporting Ronald MacKendree's personal liability. The Gallinar plaintiffs' reliance on Central National Bank is misplaced, however, because the instant case is factually distinct.
In Central National Bank, this Court held that a corporate president was personally liable on a guaranty agreement where the obvious purpose of that document (reviewing it as a whole) was to add the signor's personal guarantee to a corporate promissory note. Id. at 958. This Court reached its conclusion despite the fact that the signor affixed the word, "President" to the end of his signature. Id. This Court determined that the purpose of the document was to provide for the signor's personal liability; that the document, by its terms, provided for individual liability; and that interpreting the personal guaranty agreement as a corporate guarantee would render it a nullity. Id. Therefore, this Court held that the addition of a single word indicating the signor's representative capacity to the signature was insufficient to override the document's clear, express terms. Id.
The instant case is easily distinguishable. The letters of clarification added to the two agreements, although signed without reference to either agent's representative capacity, do not evidence any intent to expand the scope of MacKendree's or Gallinar's *977 liability. Ronald MacKendree did not add his personal guarantee to any portion of the deal between the businesses, and none of the terms mention personal liability. Instead, the clarification letters must be read in conjunction with the agreements they expressly seek to clarify, and therefore, the parties to the agreements remain unchanged: the two separate accounting firms. Accordingly, we reverse the trial court's summary judgment to the extent that it holds Ronald MacKendree personally liable on agreements to which he was not a party, executed between two separate businesses.

Issues of Fact Preclude Summary Judgment for Breach of the Partnership Agreement
When the trial court granted the Gallinar plaintiffs' partial motion for summary judgment on Count IX (breach of the partnership agreement) it found that MacKendree did not retire and, as a matter of law, that MacKendree was in material breach. The MacKendree defendants argue that those findings amount to reversible error because the evidence establishes that Ronald MacKendree did retire, and there were a number of issues of material fact regarding the breach of contract claim that precluded summary judgment. We agree.
The gravamen of the Gallinar plaintiffs' breach of contract claim is that Ronald MacKendree, upset with Gallinar's handling of his former clients, resumed business with some of the clients who were a part of the sale, thereby effecting MacKendree's breach of the express and implied non-compete covenant evidenced by the written agreements. Were that version of the facts undisputed, we would be bound to uphold the trial court's ruling. However, the evidence is clouded with issues of fact that preclude summary judgment.
The trial court's ruling, granting summary judgment on the breach of contract claim, was based, in part on its finding as a matter of law that Ronald MacKendree did not retire. The undisputed facts, however, demonstrate that Ronald MacKendree did indeed retire from the MacKendree and Gallinar partnership by December 1, 2005, as required by the two agreements. Ronald MacKendree mailed a notice to his clients in November 2005, explaining that he was retiring and turning his accounting practice over to Gallinar. Ronald MacKendree packed up his personal belongings and vacated his office. The work performed by Ronald MacKendree between December 1, 2005, and the time he resumed business with his former clients was done at Gallinar's request, and on a per diem basis. Additionally, Gallinar made numerous payments under the asset purchase agreement, which suggests that MacKendree complied with its end of the deal.
The agreements specifically reflect that although Ronald MacKendree was to "retire," he was not required to cease working in the accounting profession. Instead, the parties understood that Ronald MacKendree's "retirement" was simply a retirement from the partnership. The express terms of the agreements reveal that a number of clients were excluded from the sale to Gallinar and were to remain Ronald MacKendree's clients with the understanding that Ronald MacKendree would continue to service their accounts. In addition, Ronald MacKendree was hired by Gallinar to work as an accountant at what was now Gallinar's firm, in the months following the sale. The only "retirement" obligation imposed by the agreements was that Ronald MacKendree refrain from competing with Gallinar in the future by servicing the clients listed in the asset purchase agreement, and by all accounts, *978 he complied with that requirement for some time. Thus, we find that the trial court erred in finding that Ronald MacKendree did not retire, and on that basis finding as a matter of law that MacKendree breached the agreements. Whether MacKendree breached the agreements when Ronald MacKendree serviced some of the clients sold to Gallinar is, however, a material issue of fact which precludes summary judgment because Ronald MacKendree claims that at the time he began servicing the clients, Gallinar had already breached the agreements. As there is evidence to support such a finding, the issue is one which must be decided by the trier of fact.
Ronald MacKendree stated in a sworn deposition that as early as December 2005, Gallinar had fallen behind on the payments called-for by the asset purchase agreement. In a later affidavit, Ronald MacKendree averred that in the year following the wrapping-up of the MacKendree and Gallinar partnership, over $90,000 was due, but unpaid under the contract. The MacKendree defendants allege that these facts indicate that Gallinar was in material breach of the agreements before Ronald MacKendree resumed business with some of his former clients, thus excusing his conduct. While we do not pass on the merits of the parties' opposing viewpoints, we conclude that material facts are in direct conflict, thereby precluding summary judgment. Volusia County, 760 So.2d at 130.
To the extent that the trial court denied the motion for summary judgment brought by the MacKendree defendants on their claim for breach of the agreements because there exist material issues of fact, we affirm. We, however, reverse the trial court's order granting summary judgment as to Gallinar's breach of contract claim and the trial court's award of the $50,000 deposit plus accrued interest to Gallinar.

The Trial Court Erred in Dismissing the Counterclaims as Moot
Among the counterclaims brought by the MacKendree defendants were claims for unpaid per diem fees (incurred after the sale of the practice) and accounts receivable payable to MacKendree, but retained by Gallinar. These claims were dismissed as moot by the trial court in its final judgment. The MacKendree defendants argue that the trial court erred in dismissing these independent claims as moot. We agree, and reinstate the MacKendree defendants' counterclaims as well as the Gallinar plaintiffs' claims that were erroneously dismissed as moot.
"An issue is moot when the controversy has been so fully resolved that a judicial determination can have no actual effect." Godwin v. State, 593 So.2d 211, 212 (Fla.1992). Additionally, "[a] case is `moot' when it presents no actual controversy or when the issues have ceased to exist." Id. (citing Black's Law Dictionary 1008 (6th ed. 1990)). The dismissal of Ronald MacKendree's counterclaim alleging non-payment of the per diem fees he claims are owed to him by Gallinar as moot was error as this counterclaim was based on facts independent of the partnership agreement upon which the trial court entered summary judgment. The other counterclaims brought by the MacKendree defendants regarding the non-payment of the accounts receivable are not moot because we reverse the trial court's grant of summary judgment in Gallinar's favor. We, therefore, reverse the trial court's dismissal of the MacKendree defendants' counterclaims as moot, and instruct the trial court to reinstate them for consideration consistent with this opinion. We also instruct the trial court to reinstate the Gallinar plaintiffs' claims because the same *979 issues of fact precluding summary judgment on count IX demonstrate that those other claims continue to present viable, live controversies.

Conclusion
The record evidence clearly limits liability for breach of the agreements to the corporate entities, MacKendree & Co., P.A. and Pedro Gallinar & Associates, P.A., not any of their agents. Undisputed facts demonstrate as a matter of law that Ronald MacKendree retired in accordance with the two agreements by December 1, 2005. On the other hand, issues of fact preclude summary judgment on the question of breach of the non-compete covenant within the agreements. The counterclaims brought by the MacKendree defendants as well as the Gallinar plaintiffs' claims outside of count IX, were erroneously dismissed as moot.
Accordingly, the final judgment awarding $50,000 plus accrued interest to the Gallinar plaintiffs is reversed, and we remand with instructions to the trial court to: (1) determine whether MacKendree's breach of the non-compete covenant was excusable; (2) reinstate the counterclaims pursued by the MacKendree defendants; and (3) reinstate the Gallinar plaintiffs' claims that were erroneously dismissed as moot.
Reversed and remanded with instructions.
NOTES
[1] Throughout this opinion, the meaning of the term `retire' is limited pursuant to the instant agreements. Ronald MacKendree was not required to retire from the accounting profession, but only to refrain from competing with Gallinar by servicing the clients described in the asset purchase agreement.
[2] Although the 2004 billings formed the basis of the purchase price, the parties agreed to adjust that price upward or downward based upon the value of the clientele remaining with Gallinar as of December 1, 2006.