**STROTEK CORPORATION,**
Plaintiff–Appellant,

v.

**AIR TRANSPORT ASSOCIATION OF AMERICA;** Airbus Industries of North America; Alaska Airlines, Inc.; America West Airlines, Inc.; American Airlines, Inc.; McDonnell Douglas Corporation; Continental Airlines Inc.; Delta Airlines, Inc.; Boeing Aircraft Co.; Federal Express Corporation; Regional Airline Association; Southwest Airlines Inc.; Trans World Airlines, Inc.; United Airlines, Inc.; US Airways, Inc., Defendants–Appellees.

No. 01–16481.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 10, 2002.

Filed Aug. 22, 2002.

**1130**

Lee S. Molof and Robert C. Vohl, Molof & Vohl, Reno, NV, for the plaintiff-appellant.

Paul H. Friedman, Terri L. Bowman, Dechert Price & Rhoads, Washington, DC, for the defendants-appellees.

Before CANBY, Jr. and RYMER, Circuit Judges, and BERTELSMAN, Senior District Judge.*

## OPINION

RYMER, Circuit Judge.

This is the second round in a decade-long struggle by Strotek Corporation, a Nevada corporation, against three air frame manufacturers, eleven commercial airlines, and two trade associations who allegedly conspired to put Strotek out of business. Strotek claims that they conspired to defame its technology as a way of punishing it for convincing federal regulators to require testing of aircraft strobe lights. These allegations were first made in a federal action brought under the Sherman Act, *Strotek Corp. v. Air Transport Ass'n of Am., et al.*, CV–N–96–742–ECR (D.Nev.) (*Strotek I*), but the district court entered summary judgment against Strotek on its antitrust claim and declined to exercise supplemental jurisdiction over the state law claims, which it dismissed without prejudice. It could do this because, at the time *Strotek I* was filed (December

1996), the district court lacked diversity jurisdiction: the defendant Airline Transport Association of America (ATA) was then an unincorporated trade association deemed a citizen of any state where it had members-which included Nevada.

Strotek refiled the state law claims in Nevada state court (*Strotek II*) on October 6, 1999 against all but two of the same defendants named in *Strotek I*. The first amended complaint in *Strotek II*, which was filed December 6, 1999, names "Air Transport Association of America" as a defendant. Service was effected January 28, 2000 at the Washington, D.C. headquarters of the Air Transport Association of America, Inc. (ATA, Inc.)—the corporation that had taken over ATA's activities over a year earlier. Unlike its predecessor, ATA, Inc. is a citizen of the District of Columbia and is therefore diverse from Strotek. ATA, Inc. appeared and all defendants timely removed on February 3, 2000 on the basis of diversity jurisdiction. 28 U.S.C. §§ 1332, 1441.

Strotek moved to remand on the ground that the Air Transport Association, the entity which its complaint actually names, continues to exist as an unincorporated trade association whose Nevada members destroy diversity. The district court denied the motion because of undisputed evidence that the ATA incorporated under the laws of the District of Columbia May 21, 1998; that the ATA ceased to operate as an unincorporated association December 31, 1998; and that as of that date all of ATA's operations, assets and liabilities were transferred to ATA, Inc. Because ATA, Inc. was a citizen of Washington, D.C. when the complaint in *Strotek II* was filed and the action was removed, its presence in the lawsuit does not destroy diversity. Having jurisdiction, the court then

---

* Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

granted summary judgment on the merits in favor of ATA, Inc. and the other defendants.

Strotek appeals both rulings. We now affirm denial of the motion to remand, because "Air Transport Association of America" was ATA, Inc. at the time the action was filed and removed. ATA, Inc. is a citizen of the District of Columbia and therefore diverse from Strotek. Even though Strotek asserts that its complaint is against the unincorporated association, ATA has no obvious stake in the outcome and even if it has capacity to be sued (which we question), it would appear to be purely a nominal party whose citizenship has no effect on diversity. As the federal court has subject matter jurisdiction, we separately affirm the judgment against Strotek in a memorandum disposition.

Strotek argues that an unincorporated association cannot avoid claims of a creditor by dissolving, and that its dissolution cannot terminate its capacity to be sued. Strotek insists that its complaint proceeds against ATA, the unincorporated association—not the association's incorporated successor entity. The linchpin of Strotek's argument is the assertion that it had the prerogative to sue the unincorporated association notwithstanding that the ATA had ceased to operate in that form by the time that suit was brought. According to Strotek, this follows by analogy to partnership law: like a partnership following dissolution, the ATA continues to exist in its association form as a distinct entity until its obligations to third parties—including tort claimants—are discharged. In Strotek's view the district court erred by failing to respect that prerogative, and by deciding to disregard the citizenship of the members of the unincorporated association in deference to that of the incorporated entity that Strotek never sued.

ATA, Inc. responds that unincorporated trade associations regularly turn themselves into corporations upon the election of their members, and that there is no law requiring the unincorporated association to remain in existence until all possible claims are resolved against it. For one thing, it points out, a plaintiff seeking relief against a dissolved association may pursue the association's former members, see, e.g., Security–First Nat'l Bank of Los Angeles v. Cooper, 62 Cal.App.2d 653, 145 P.2d 722, 732 (1944) (plaintiff could maintain action against individual members of unincorporated association that ceased to exist upon incorporation), and must do so rather than proceeding against the dissolved entity itself. Strotek in fact named several former members (all diverse) as defendants in this action. For another, ATA, Inc. asserts that partnership law is an inapt analogy because unincorporated trade associations are not partnerships; they are excluded from the definition of a partnership by both the Nevada Uniform Partnership Act and the District of Columbia Partnership law. See Nev.Rev.Stat. §§ 87.060, 87.070; D.C.Code § 41–151.1(7) (current version at § 33–101.01(7) (2001)). Finally, it submits, Strotek cannot destroy diversity by naming a non-existent entity.

■■■■ This turns out to be a novel issue, perhaps because it seldom happens that a plaintiff wants to proceed against an entity which has transferred all of its assets and liabilities to a successor that is ready and willing to step up to the plate. Neither party offers authority on point, and so far as we can tell there is none. Thus, we start with the core principle of federal removal jurisdiction on the basis of diversity—namely, that it is determined (and must exist) as of the time the complaint is filed and removal is effected. See *Morongo Band of Mission Indians v. California State Bd. Of Equalization*, 858 F.2d 1376, 1380 (9th Cir.1988) (diversity is determined by citizenship of parties as of filing of the original complaint); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690

(9th Cir.1998) (diversity must exist when action is removed). Once jurisdiction attaches, a party cannot thereafter, by its own change of citizenship, destroy diversity. *Wisconsin Dep't of Corrections v. Schacht,* 524 U.S. 381, 391, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Southern Pac. Co. v. Haight,* 126 F.2d 900, 903 (9th Cir.1942). Nor may the presence of a sham or nominal party defeat removal on diversity grounds. *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318–19 (9th Cir.1998); *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir.1987).

 Adhering to these core principles, the district court concluded that it had diversity jurisdiction because ATA, Inc. was the trade association's incarnation as of the time the complaint was filed and the action was removed. We agree.

Strotek's complaint avers on information and belief that "Air Transport Association" is an unincorporated association but, as the district court recognized, those allegations simply turned out to be incorrect: the undisputed record shows that, when *Strotek II* was filed and removal was effected, "Air Transport Association" was in fact a corporation based in Washington, D.C. Strotek did nothing to challenge ATA, Inc.'s acceptance of service and its appearance for "Air Transport Association," and we believe that the district judge was right to treat Strotek's complaint as though it were directed at the living incarnation of the ATA—i.e., the corporation.[1] Thus there was complete diversity among all the parties, including those of ATA's former members whom Strotek chose to sue, at the times that citizenship matters for purposes of removal jurisdiction based on diversity.

Certainly a plaintiff can decide whom to sue, but jurisdictional *facts,* not fiction even if truly believed, are dispositive. For example, had Strotek sued John Doe Corporation, alleging on information and belief that it is a citizen of Nevada, but it turned out that the Corporation's "nerve center" is in Washington, D.C., the *allegation* would give way to the *fact* that the parties are diverse. The same would be true if Strotek had sued John Doe, alleging that he was a citizen of Nevada but it turned out that his permanent residence is in the District of Columbia. The only difference here is that Strotek sued John Doe *Association.* This effectively alleged that the association is a citizen of Nevada because of a member's presence there, but John Doe Association turned out to be incorporated with its headquarters in Washington, D.C. It could as well have turned out that the member thought to be a citizen of Nevada was in fact a citizen of another state. In each instance, the result is the same: actual citizenship controls—not the plaintiff's mistaken allegations.

Absent some compelling argument by Strotek, we must follow the default rule requiring diversity to be assessed as of the time that the complaint is filed and removal is effected. None of Strotek's contentions persuades us not to do so.

First, Strotek points to no statutory or decisional law that requires an unincorporated association to stay alive for purposes of diversity jurisdiction, or to "wind up" in any respect other than ATA did. All that Strotek offers is an analogy to partnership law. But non-profit trade associations are not partnerships; they are collections of members, and trade association members are not partners. Whether Nevada or D.C. law applies—and the parties offer no helpful insight on this—it is undisputed (and seems indisputable) that the individu-

---

1. Strotek's erroneous allegations regarding the ATA's association status would not invalidate service of process on the true defen- dant—i.e., ATA, Inc. *See United States v. A.H. Fischer Lumber Co.,* 162 F.2d 872, 873 (4th Cir.1947).

al members of non-profit associations are normally liable only to the extent that they themselves committed, authorized, or ratified the actions in question. *See* 7 C.J.S. *Associations* § 32 (1990); *Security First Nat'l Bank*, 145 P.2d at 729–30. This is very different from the relationship between partners and their partnership, or joint venturers and their joint venture. *Cf., e.g., Schiavone Construction Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir.1996) (joint venturer is still party to suit, destroying diversity, even though its rights had been assigned prior to commencement of suit because the joint venture continues until pre-existing matters are terminated). In short, the partnership analogy is unavailing.

Second, Strotek offers no explanation why there is any connection between the association's change of form and Strotek's ability to pursue liability against it. Indeed, *Security–First*, the case that all parties regard as their "best" case, indicates that while members of an unincorporated association may continue to be bound after it becomes an incorporated association and

dissolves, the unincorporated association itself ceases to exist as such upon incorporation. *See Security–First*, 145 P.2d at 731.

■ Third, even crediting Strotek's theory that it intended to and did sue only ATA, it does not appear that ATA has any personal stake in the outcome of this case. It is dissolved, has no operations, and its liabilities have been transferred to ATA, Inc. Defendants who are nominal parties with nothing at stake may be disregarded in determining diversity, despite the propriety of their technical joinder. *See, e.g., Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir.2000); 13B Wright, Miller & Cooper, *Federal Practice and Procedures: Jurisdiction 2d* § 3606 (1984).

Finally, it is not clear that an unincorporated trade association even has the capacity to be sued in Nevada, where this action was originally filed, regardless of whether it is alive or dead.[2] If not, even if ATA were the named defendant, ATA and its citizenship would have to be disregarded for purposes of federal jurisdiction because

---

**2.** At common law and in Nevada, it is well settled that unincorporated associations are not legal entities separate from their members and that they therefore lack the capacity to be sued in their own names; the capacity of an unincorporated association to be sued in its common name extends only so far as the common-law rule has been abrogated by statute. 7 C.J.S. *Associations* § 2 (1980); 6 Am. Jur.2d *Associations and Clubs* § 51 (1999); 4A Wright & Miller, *Federal Practice and Procedure: Civil 3d* § 1105 (2002); *Branson v. Industrial Workers of the World*, 30 Nev. 270, 95 P. 354, 358 (1908). The only Nevada statute to alter that principle is Nev.Rev.Stat. § 12.110, which provides, in pertinent part:

When two or more persons, associated in any business, transact such business under a common name ... the associates may be sued by such common name, the summons in such cases being served on one or more of the associates; and the judgment in the action shall bind the joint property of all

the associates, in the same manner as if all had been made defendants and had been sued upon their joint liability.

So far as we can tell, § 12.110 has not been applied to unincorporated trade associations. *Cf. Richard Matthews, Jr., Inc. v. Vaughn*, 91 Nev. 583, 540 P.2d 1062, 1066 (1975) (§ 12.110 applies to general business partnerships); *see Hanley v. Sheet Metal Workers Int'l Ass'n*, 72 Nev. 52, 293 P.2d 544, 545 (1956) (refusing to apply § 12.110's service of process provision to a non-profit association such as a labor union). Neither does it seem logical that it would be, for a trade association conducts no "business" and its members have no joint liability. If § 12.110 does not apply, the common law rule does. This means that the ATA could not effectively be sued in its common name in Nevada. *Strotek I* did not face the same obstacle because there, Strotek sought to enforce rights under federal law. *See* Fed.R.Civ.P. 17(b).

federal jurisdiction cannot be predicated on the citizenship of a party which lacks the capacity to be sued. *Day v. Avery,* 548 F.2d 1018, 1023–24 (D.C.Cir.1977). Thus, Strotek would end up in the same place it is now: without ATA as a party, all remaining parties are diverse.

Accordingly, we conclude that the district court properly analyzed the diversity of the parties as of the time *Strotek II* was filed and removed. ATA, Inc. *was* the "Air Transport Association of America" at that time. Despite Strotek's focus on liability for debts of a dissolved entity, there is no suggestion in this case that solvency has anything to do with its choice of defendant. It could still pursue ATA, Inc., and ATA's former members. Rather, Strotek's objection to ATA, Inc. appears driven entirely by Strotek's desire to avoid the federal forum where it had lost in *Strotek I.* In sum, ATA, Inc. carried its burden of establishing that diversity of citizenship existed, and nothing Strotek argues persuades us otherwise.

AFFIRMED.