No. 3-02-0047

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2002

DONALD LEE BRUSH, ) Appeal from the Circuit Court

DEBORAH BRUSH and DANIELLE ) of the 9
th
 Judicial Circuit,

BRUSH, ) McDonough County, Illinois.

 )

Plaintiffs-Appellants, )

 )

 ) No. 01-CH-15

 )

JESSE R. GILSDORF, CRAIG F. ) 

PIERCE AND PIERCE LAW OFFICES, ) Honorable James B. Stewart,

P.C., an Illinois professional ) Judge, Presiding.

corporation, ) )

Defendants-Appellees. )

_________________________________________________________________

Modified Upon Denial of Rehearing 

JUSTICE McDADE delivered the opinion of the court:

_________________________________________________________________

Plaintiffs, Donald Lee Brush, Deborah Brush, and Danielle Brush, brought an action for breach of fiduciary duty against their attorneys Craig F. Pierce and Jesse R. Gilsdorf and their law firm. The trial court ordered plaintiffs' request for punitive damages stricken from the complaint. Plaintiffs filed an interlocutory appeal pursuant to Supreme Court Rule 308(a)(134 Ill. 2d R. 308(a)), which this court accepted. The sole question on appeal is whether punitive damages are available in an action for breach of fiduciary duty against an attorney. We find that they are not and we affirm.

BACKGROUND

This appeal arises from an action brought by Jennifer Brush, the executrix of the estate of her deceased husband, Michael Brush, to recover estate property from Michael's father, Donald Brush and sister, Danielle Brush. 

Michael suffered from an impulse disorder as a result of a traumatic brain injury sustained in a motorcycle accident in March 1997. His ability to function independently was also impaired. 

Following the accident, Michael was arrested more than eight times and was charged in McDonough County with traffic violations, disorderly conduct offenses and one aggravated battery offense against a police officer. Michael's sister, Danielle, hired attorney Craig F. Pierce and his law firm, the Pierce Law Offices, to represent Michael on these criminal charges. Defendant Jesse R. Gilsdorf, then an assistant State's Attorney, represented the State on several of these charges. Michael's fitness to stand trial became an issue, and Gilsdorf had access to the report concerning Michael's confidential psychological examination. In November 1997, Michael was found unfit. 

Michael died of a gunshot wound on July 25, 1998. He was intestate and his sole heir at law was his wife, Jennifer. On July 17, eight days before his death, Michael transferred $60,000 from a savings account he jointly held with Jennifer to a bank account under Donald's name. 

At the time of his death, Michael lived, apparently alone, in a mobile home in which he had an equity interest of approximately $3,300. He owed the seller $1,700. In August of 1998, Danielle contacted Pierce regarding Michael's estate. Pierce immediately prepared a small estate affidavit, with Danielle serving as executrix. Danielle moved into the mobile home in the same month. In October 1998, Donald paid the remaining balance owing on the mobile home from the funds given to him by Michael in July 1998. 

On February 11, 1999, Jennifer was named the independent administrator of Michael's estate. Through her counsel, Jennifer contacted Donald and Danielle seeking the return of any property belonging to Michael's estate. 

Donald and Danielle then requested Pierce to represent them against the property claim made by Jennifer. Citing to a possible conflict of interest from his previous representation of Michael, Pierce referred Donald and Danielle to Gilsdorf, who had left the State's Attorney's office and had become an associate attorney at the Pierce Law Offices.

Gilsdorf undertook the representation and Pierce agreed to serve as a consulting attorney. According to Donald and Danielle, neither Pierce nor Gilsdorf explained to them that Gilsdorf's previous prosecution of criminal charges against Michael and his knowledge of Michael's confidential psychological report could create a possible conflict of interest. 

On December 16, 1999, Jennifer sued Donald and Danielle to recover estate property. Between November 1999 and May 2000, Jennifer made several written offers to settle her property claims against Donald and Danielle. Jennifer moved to disqualify attorneys Pierce, Gilsdorf and the Pierce Law Offices on July 12, 2000, alleging Gilsdorf's conflict of interest. By October 25, 2000, Pierce, Gilsdorf and the Pierce Law Offices had sought and were granted leave to voluntarily withdraw as counsel for Donald and Danielle.    

On November 15, 2000, a judgment was entered against Donald and Danielle in an amount exceeding Jennifer's settlement offers.

On June 4, 2001, Donald and Danielle filed an action for breach of fiduciary duty against Pierce, Gilsdorf and their law firm. Plaintiffs essentially alleged that their attorneys failed to disclose to them: (1) possible conflicts of interest and (2) settlement offers from Jennifer. The complaint prayed for the forfeiture of defendants' compensation as well as the amount of judgment entered against Donald and Danielle. 

Plaintiffs also sought punitive damages in connection with defendants' alleged misconduct. Defendants moved to dismiss the prayer for punitive damages, and the trial court, in reliance on section 2-1115 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1115 (West 1992)), ordered the prayer stricken from the complaint. The trial court also found that this matter involves a question of law on which there is substantial ground for difference of opinion and that the immediate appeal of the matter would materially advance the termination of the litigation. Pursuant to Illinois Supreme Court Rule 308(a)(134 Ill. 2d R. 308(a)), plaintiffs filed an interlocutory appeal on January 19, 2002. 

ANALYSIS

I. The Applicability of Section 2-1115

On appeal, plaintiffs contend that section 2-1115 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1115 (West 1992)) does not bar punitive damages in an action for breach of fiduciary duty. Section 2-1115 bars punitive damages in healing art and legal malpractice cases. It provides, in pertinent part:

"In all cases, whether in tort, contract or otherwise, in which the plaintiff seeks damages by reason of legal, medical, hospital, or other healing art malpractice, no punitive, exemplary, vindictive or aggravated damages shall be allowed." 735 ILCS 5/2-1115 (West 1992).

Despite the broad language provided by section 2-1115, there is a split within the Illinois Appellate Court as to the scope of the prohibition of punitive damages. The First District has construed the prohibition broadly, barring punitive damages even if the malpractice constituted a fraud upon the plaintiff. 
Calhoun v. Rane
, 234 Ill. App. 3d 90, 599 N.E.2d 1318 (1992). This district expressly disagreed with this broad prohibition. In 
Cripe v. Leiter
, 291 Ill. App. 3d 155, 683 N.E.2d 516
 (1997), the defendant attorney falsified bills with regard to the number of hours that were spent on the client's case. The court reasoned that although section 2-1115 precludes punitive awards in legal malpractice suits, legal malpractice and common law fraud are separate and distinct actions; therefore, punitive damages can be awarded in fraud cases. 
Cripe
, 291 Ill. App. 3d at 159. Our decision in 
Cripe
 is not dispositive of the present case because we deal not with fraud but with fiduciary duty. 

A fiduciary relationship exists as a matter of law between an attorney and his client. 
Drake v. Becker
, 14 Ill. App. 3d 690, 696, 303 N.E.2d 212 (1973).  Thus, in effect any alleged malpractice by an attorney also evidences a simultaneous breach of trust; however, that does not mean every cause of action for professional negligence also sets forth a separate and independent cause of action for breach of fiduciary duty. 
Calhoun v. Rane
, 234 Ill. App. 3d 90, 95, 599 N.E.2d 1318 (1992). Instead, the availability of punitive damages depends on whether 
 
plaintiffs’ breach of fiduciary duty claim falls within "the rubric of [legal] malpractice." 
Owens v. McDermott, Will & Emery
, 316 Ill. App. 3d 340, 351, 736 N.E.2d 145 (2000). In other words, in determining the applicability of section 2-1115, the court must look to the "nature of the behavior alleged" in plaintiffs' complaint to "determine whether the activities fall within the term ‛legal malpractice’." 
Safeway Insurance Co. v. Spinak
, 267 Ill. App. 3d 513, 518, 641 N.E.2d 834, 837 (1994); 
Cripe
, 291 Ill. App. 3d at 158-59 (section 2-1115 is only applicable if the conduct alleged in the complaint amounts to legal malpractice). 

According to Black's Law Dictionary, legal malpractice "[c]onsists of failure of an attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in performance of tasks which they undertake." Black's Law Dictionary 959 (6th ed. 1990). A review of the record before this court reveals that the complaint articulates nothing more than an action for legal malpractice. It essentially alleges that plaintiffs' injury was brought about by two related acts of misconduct, namely, defendants' failure to explain the potential conflict of interest that existed between attorney Gilsdorf and Michael, and defendants' failure to disclose settlement offers. Both acts arose from the provision of legal services. Here, because injury was suffered by reason of the attorneys' professional conduct during the course of legal representation, the gravamen of the claim is legal malpractice, regardless of which theory or claim has been pled.  

Furthermore, Illinois courts have repeatedly rejected breach of fiduciary duty claims brought against attorneys on the basis that they are duplicative of negligence or malpractice claims. 
Neade v. Portes
, 193 Ill. 2d 433, 739 N.E.2d 496 (2000). For example, in 
Calhoun
, the client retained an attorney to represent him before the Illinois Industrial Commission. Although the attorney did file a petition with the Commission, he allowed it to be dismissed for want of prosecution, failed to vacate the dismissal, and failed to inform the client that the petition had been dismissed. In the ensuing action by the client against the attorney, the court held that the client had failed to demonstrate a breach of fiduciary duty by the attorney apart from professional negligence. 
Calhoun
, 234 Ill. App. 3d  at 95. 

In this case, section 2-1115 applies to bar the punitive damages claim. 

II. Aggravating Circumstances

Even if a breach of fiduciary duty claim were conceptually distinct from a claim for legal malpractice and plaintiffs' complaint sufficiently alleged every element of that claim, punitive damages still may not be warranted in this case. The Illinois Supreme Court has upheld section 2-1115 as a constitutional expression of a legitimate legislative goal, determining that it did not violate equal protection and due process guarantees, the Illinois Constitution's single-subject clause, or the ban on special legislation. 
Bernier v. Burris
, 113 Ill. 2d 219, 497 N.E.2d 763 (1986). The court recognized that the legislature enacted this statute intending to prevent the imposition of excessive liability and undue burdens on providers of professional services. 
Bernier
, 113 Ill. 2d at 246.

The supreme court has also instructed that because of their penal nature, punitive damages are not favored, and Illinois courts must be cautious in seeing that they are not improperly or unwisely awarded. 
In re Estate of Wernick
, 127 Ill. 2d 61, 83, 535 N.E.2d 876, 886 (1989); 
Kelsay v. Motorola, Inc.
, 74 Ill. 2d 172, 188, 384 N.E.2d 353, 360 (1978). However, punitive damages may be warranted in cases where the wrongful act complained of is characterized by wantonness, malice, oppression or other circumstances of aggravation.  
Wernick
, 127 Ill. 2d at 83-84; 
Knierim v. Izzo
, 22 Ill. 2d 73, 87, 174 N.E.2d 157, 165 (1961); 
Glass v. Burkett
, 64 Ill. App. 3d 676, 683, 381 N.E.2d 821, 826 (1978).

Such aggravating circumstances are not present in this case. Nothing in the facts alleged in the complaint imply that the attorneys' actions were willful or wanton. In light of the facts that Michael Brush and his estate are separate persons and that Gilsdorf had never represented any party to the underlying action, the existence of a possible conflict of interest is not so readily apparent that the representation could be viewed as willful and wanton misconduct.  Moreover, assuming the truth of plaintiffs’ allegations , the non-disclosure of settlement offers to the client is a violation of professional obligations falling squarely within the parameters of legal representation.  We believe these to be simple allegations of breach of fiduciary duty falling within the rubric of legal malpractice and, therefore, insufficient for the purpose of awarding punitive damages. 

Plaintiffs cite 
In re Marriage of Pagano
, 154 Ill. 2d 174, 607 N.E.2d 1242 (1992), and 
Lurz v. Panek
, 172 Ill. App. 3d 915, 527 N.E.2d 663 (1988), to support their position regarding punitive damages. However, the misconduct alleged by the plaintiffs in those cases
 occurred prior to the enactment of section 2-1115. Therefore, the portion of each opinion regarding punitive damages arising from legal malpractice is not applicable following the effective date of section 2-1115. 

CONCLUSION

For the reasons discussed above, plaintiffs' breach of fiduciary duty claim is not beyond the scope of section 2-1115. Their request for punitive damages is barred accordingly.

Affirmed. 

LYTTON, P.J., and BRESLIN, J.,concur.