# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2059

DONALD HOAGLAND, as receiver
of Midwest Transit, Inc.,

*Plaintiff-Appellant*,

*v.*

SANDBERG, PHOENIX & VON GONTARD, P.C.,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01-4246-JPG—**J. Phil Gilbert**, *Judge*.

———————

ARGUED DECEMBER 11, 2003—DECIDED SEPTEMBER 22, 2004

———————

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. Donald Hoagland, as receiver for Midwest Transit, filed suit in an Illinois state court against the Sandberg law firm, which in the course of representing Midwest had, Hoagland charged, wronged its client. The law firm removed the suit to federal district court on the basis of diversity of citizenship. The district court entered

judgment for Sandberg after determining that Hoagland had not proved the elements of legal malpractice, and Hoagland appeals.

As happens all too often when a suit comes into the federal courts by removal, so that the original pleadings did not specify a basis for federal jurisdiction, the case came to us without adequate specification of the citizenship of the parties, even though the only possible basis for federal jurisdiction was diversity of citizenship. We therefore directed the parties to file supplemental briefs addressed to jurisdiction, and they have done so. The supplemental briefs reveal that Hoagland is a citizen of Illinois; and it is his citizenship rather than Midwest's that is germane to diversity, *FDIC v. Elefant*, 790 F.2d 661, 665-66 (7th Cir. 1986); *Gross v. Hougland*, 712 F.2d 1034, 1037-39 (6th Cir. 1983); *Jump v. Manchester Life & Casualty Management Corp.*, 579 F.2d 449, 452 n. 4 (8th Cir. 1978); cf. *Navarro Savings Ass'n v. Lee*, 446 U.S. 458 (1980), because there is no suggestion that he was appointed receiver in order to create diversity jurisdiction. 28 U.S.C. § 1359; *Gross v. Hougland*, *supra*, 712 F.2d at 1037-39. The briefs also reveal, however, that while the Sandberg firm is a professional corporation incorporated and having its principal place of business in Missouri, three of the twenty-two members of the firm (the shareholders in the professional corporation) are citizens of Illinois. If the citizenship of the members is what counts for purposes of determining diversity, as would be the case if the law firm were a partnership, a limited liability company, or any other noncorporate enterprise, then the requirement of complete diversity has not been met and the suit must be dismissed for want of federal jurisdiction.

In *Coté v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986), however, we held, as had the Second Circuit in *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87, 89 (2d Cir. 1983),

that for purposes of the diversity jurisdiction a professional corporation should be treated like any other corporation, rendering the members' citizenship irrelevant. A number of subsequent cases are in accord. *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 399, 400 (3d Cir. 2003); *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 114, 115 n. 1 (2d Cir. 2002); *Edell & Associates, P.C. v. Law Offices of Peter G. Angelos*, 264 F.3d 424, 427 (4th Cir. 2001); *Duffey v. Wheeler*, 820 F.2d 1161, 1162 (11th Cir. 1987). There are no contrary decisions.

We reaffirmed *Coté* in *Saecker v. Thorie*, 234 F.3d 1010, 1010-13 (7th Cir. 2000), and at about the same time, in a case involving a nonprofit corporation, made clear that *Coté* stands for a rule that "for purposes of diversity jurisdiction a corporation is a corporation is a corporation," *CCS Information Services, Inc. v. American Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000) (quoting *Coté v. Wadel*, *supra*, 796 F.2d at 983); see also *National Ass'n of Realtors v. National Real Estate Ass'n, Inc.*, 894 F.2d 937, 939 (7th Cir. 1990); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528-29 (7th Cir. 2002); *Mutual Service Casualty Ins. Co. v. Country Life Ins. Co.*, 859 F.2d 548, 550-51 (7th Cir. 1988)—it doesn't matter what kind. Yet we know that business entities that are functionally similar to corporations, but are not formally corporations, such as limited partnerships and limited-liability companies, are not classified as corporations for diversity purposes. *Carden v. Arkoma Associates*, 494 U.S. 185 (1990); *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 454-57 (1900); *Belleville Catering Co. v. Champaign Market Place, L.L.C.*, 350 F.3d 691, 692-93 (7th Cir. 2003); *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 245 (7th Cir. 2003); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1021-22 (11th Cir. 2004) (per curiam); *GMAC Commercial Credit LLC v. Dillard Department Stores, Inc.*, 357 F.3d 827 (8th Cir. 2004); *Riley v. Merrill Lynch, Pierce, Fenner & Smith,*

*Inc.*, 292 F.3d 1334, 1337-40 (11th Cir. 2002); *Handelsman v. Bedford Village Associates Limited Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000). Since professional corporations differ in certain respects from business corporations, perhaps in more respects than the entities involved in the cases just cited, we were led in *Saecker v. Thorie*, *supra*, 234 F.3d at 1012-13, to wonder whether the rule of *Coté* could be reconciled with these cases.

Upon reconsideration, however, we have concluded that we ought to continue to follow *Coté* rather than overrule it and by doing so create an intercircuit conflict and, worse, inject confusion into the determination of federal jurisdiction. A salient consideration in favor of *Coté* is the easy applicability of a rule that treats any corporation as a corporation for diversity purposes. Functional approaches to legal questions are often, perhaps generally, preferable to mechanical rules; but the preference is reversed when it comes to jurisdiction. When it is uncertain whether a case is within the jurisdiction of a particular court system, not only is the cost and complexity of litigation increased by the necessity of conducting an inquiry that will dispel the uncertainty but the parties will often find themselves having to start their litigation over from the beginning, perhaps after it has gone all the way through to judgment. "Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated." *In re Lopez*, 116 F.3d 1191, 1194 (7th Cir. 1997); see also *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988); *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 549-56 (1995) (concurring opinion); *Kennedy v. Wright*, 851 F.2d 963, 967 (7th Cir. 1988); *Inter-Coastal Xpress, Inc. v. United States*, 296 F.3d 1357, 1367 (Fed. Cir. 2002). "The more mechanical the application of a jurisdictional rule, the better. The chief and often the only

virtue of a jurisdictional rule is clarity." *In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987) (citations omitted).

There is an *enormous* variety of types of corporation. There are business corporations, professional corporations, public benefit and charitable corporations, mutual benefit corporations, religious corporations, educational and scientific corporations, municipal and other public corporations, cooperative corporations, corporations sole (see, e.g., Cal. Corp. Code § 10002), and Native American tribal corporations. See 1 & 1A William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations*, ch. 3 (rev. ed. 1999), and 1 James D. Cox & Thomas Lee Hazen, *Cox & Hazen on Corporations*, ch. 1 (2d ed. 2003). Would it be a sensible, or even a feasible, judicial undertaking to create and apply, case by case, a standard for deciding which of these should be classified as corporations for purposes of the diversity jurisdiction and which not? No court has thought so. *All* the cases that discuss the citizenship of nonbusiness corporations hold that they are indeed corporations for diversity purposes. Besides those we've cited already, see *Moor v. County of Alameda*, 411 U.S. 693, 717-18 (1973) (municipal corporation); *City of Clinton v. Moffitt*, 812 F.2d 341, 342 (7th Cir. 1987) (same); *Rucci v. City of Pacific*, 327 F.3d 651, 652 (8th Cir. 2003) (same); *Caudle v. American Arbitration Ass'n*, 230 F.3d 920, 922 (7th Cir. 2000) (nonprofit corporation); *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109-10 (7th Cir. 1983) (public corporation); *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1202-03, 1206-07 (1st Cir. 1993) (same); *Gaines v. Ski Apache*, 8 F.3d 726, 729 (10th Cir. 1993) (tribal corporation); *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1226 (9th Cir. 1989) (same). Countless other cases assume that business and nonbusiness corporations should be treated the same. E.g., *Tosco Corp. v. Communities for a Better Environment*, 236 F.3d 495 (9th Cir. 2001) (per curiam) (nonprofit

corporation); *Bell v. United States*, 754 F.2d 490, 494-95 (3d Cir. 1985) (same); *Knab Co. v. St. Mary's Hospital, Inc.*, 286 F.2d 854, 855 (7th Cir. 1961) (charitable corporation); *Wellness Community-National v. Wellness House*, 70 F.3d 46, 47 (7th Cir. 1995) (same); *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico & Caribbean Cardiovascular Center Corp.*, 322 F.3d 56, 59 (1st Cir. 2003) (public corporation); *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1130-32 (9th Cir. 2002) (incorporated trade association); *American Institute of Chemical Engineers v. Reber-Friel Co.*, 682 F.2d 382, 383-84 (2d Cir. 1982) (educational and scientific nonprofit corporation); *Lyxell v. Vautrin*, 604 F.2d 18, 19-20 (5th Cir. 1979) (per curiam) (religious corporation). Is all this law to be discarded?

Simplicity, at least, could be preserved by a rule that only a corporation organized under a state's business-corporation law is a corporation for purposes of the diversity jurisdiction. But such a rule would involve the courts in rewriting the diversity statute. The statute states flatly that a "corporation" is a citizen of the state in which it is incorporated and also the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1). The word is not qualified. In refusing in *Carden* to treat a limited liability company as a "corporation" for purposes of the diversity statute, the Supreme Court dropped no hint that the corporations of which the statute speaks are limited to business corporations. Had the Court been minded to go down that road— had it thought there was some reason to think Congress had wanted to confine the corporate category to business corporations—it might have been expected to consider whether noncorporate business entities that were functionally similar to business corporations should be treated the same way in order to carry out Congress's desire to give special treatment to businesses. Far from adopting a functional approach, one that might cast a shadow over *Coté*,

*Carden* rejects such an approach in favor of drawing a bright line between corporations and all other associations. The Court said that "having established special treatment for corporations, we will leave the rest to Congress." *Carden v. Arkoma Associates*, *supra*, 494 U.S. at 197. We shall do likewise.

*Coté* was decided in 1986; the Second Circuit's similar decision had been rendered three years earlier. In the years since, a judicial consensus has, as we have seen, emerged that all corporations are to be treated the same way in determining citizenship for diversity purposes. Against this background, our overruling *Coté* would cause needless confusion and create an intercircuit conflict. Such a step would be especially gratuitous because of the tendency already noted in *Saecker* toward the convergence of professional with business corporations. *Saecker v. Thorie*, *supra*, 234 F.3d at 1012; see also Christopher C. Wang, Comment, "Breaking Up Is Hard to Do: Allocating Fees from the Unfinished Business of a Professional Corporation," 64 *U. Chi. L. Rev.* 1367, 1372-75 (1997). The tax advantages that formerly motivated the choice of the corporate form by law firms have largely been eliminated, Cox & Hazen, *supra*, § 1.23, pp. 73-74, and that choice is now determined, just as in the case of business firms, by the advantages of limited liability, perpetual existence, and the other traditional advantages of incorporation. See Robert W. Hillman, "Organizational Choices of Professional Service Firms: An Empirical Study," 58 *Business Lawyer* 1387, 1391-93 (2003); Thomas E. Rutledge, "The Place (If Any) of the Professional Structure in Entity Rationalization," 58 *Business Lawyer* 1413, 1417-19 (2003); Robert W. Hamilton, "Professional Partnerships in the United States," 26 *J. Corp. L.* 1045, 1048-51 (2001); Debra L. Thill, Comment, "The Inherent Powers Doctrine and Regulation of the Practice of Law: Will Minnesota Attorneys Practicing in Professional Corporations or Limited Liability Companies Be Denied the Benefit of

Statutory Liability Shields?," 20 *Wm. Mitchell L. Rev.* 1143, 1148-49, 1152-57 (1994); see also 1A Fletcher, *supra*, § 70.10.

In Missouri, the state in which the Sandberg firm is incorporated and has its principal place of business, the professional-corporation statute makes the regular corporation law of Missouri applicable to professional corporations. Vernon's Annotated Missouri Statutes §§ 356.031, 356.061; see also, e.g., *Churchman v. Kehr*, 836 S.W.2d 473, 477-78 (Mo. App. 1992). At the same time, Missouri authorizes the formation of "Limited Liability Companies." Vernon's Annotated Missouri Statutes §§ 347.010, 347.187; Nimrod Chapel, Jr., "The Limited Liability Company: Small Business Applications in Missouri," 53 *J. Mo. Bar* 348 (1997). Had the Sandberg firm followed that route—a route Missouri regards as legally distinct—the rule of *Carden v. Arkoma Associates* would have clicked in and removal of the litigation to the federal district court would have been precluded. On the other hand, the firm could have elected to be taxed on a pass-through basis—that is, there would have been no state income tax at the entity level—while as a professional corporation it must, like a regular business corporation, pay corporate income tax unless it elects Subchapter S status. 26 U.S.C. §§ 11(b)(2), 1362(a); Revenue Ruling 70-101, 1970-1 CB 278; Hamilton, *supra*, 26 *J. Corp. L.* at 1052 n. 21.

The major difference remaining between a professional corporation and a business corporation (besides the facts that "only licensed professionals who are employed by the professional corporation may be shareholders or directors" and that "shares can only be transferred to other individuals licensed to practice in the same profession," 1A Fletcher, *supra*, § 70.10) is that the former usually requires less financial capital, the principal capital of a professional corporation being its human capital—the skills and reputation and contacts of its professional employees. But of course

there are many professional corporations that have more financial capital than many business corporations; there are law firms today that have annual revenues of hundreds of millions of dollars—two of them just passed the billion-dollar mark. In the case of professional as of business corporations, limited liability makes it easier to raise equity capital from individuals who do not want to place their personal assets (beyond those invested in the corporation) at risk.

In the case neither of a business corporation nor of a professional corporation does limited liability shield the personal assets of investors who cause the corporation to commit a tort or other unlawful act. This is an important point the neglect of which has led to an exaggerated sense, illustrated by such cases as *South High Development, Ltd. v. Weiner, Lippe & Cromley Co.*, 445 N.E.2d 1106, 1107-08 (Ohio 1983) (per curiam), and *Kenneth A. Vinall, D.D.S., P.C. v. Hoffman*, 651 P.2d 850, 851-52 (Ariz. 1982); see H. Bradley Jones, "The Professional Corporation," 27 *Fordham L. Rev.* 353, 354-55 (1958), of the practical difference between professional and business corporations. Of course a lawyer cannot insulate himself from a malpractice suit by incorporating. But neither can an individual who uses his position in a business corporation to commit a tort. Suppose a corporate employee in furtherance of his employment bribes the purchasing officer of one of his corporation's customers. The customer (if harmed by the bribe) can sue the corporation—but he can also sue the employee who did the bribing. "It is a common misunderstanding that the principle of limited liability protects the shareholders and officers of a corporation for liability for their own wrongful acts. It does not. It protects them from *derivative* liability, that is, from being called to account for the wrongs of the corporation." *Spartech Corp. v. Opper*, 890 F.2d 949, 953 (7th Cir. 1989) (emphasis in original); see also *Dietrich v. Cape Brewery & Ice Co.*, 286 S.W. 38, 41 (Mo. 1926); *Browning-Ferris Industries of Illinois, Inc. v. Ter*

*Maat*, 195 F.3d 953, 955-56 (7th Cir. 1999); *Refrigeration Sales Co. v. Mitchell-Jackson, Inc.*, 770 F.2d 98, 102-03 (7th Cir.1985); *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 734 (9th Cir. 1999); *Haupt v. Miller*, 514 N.W.2d 905, 907-08 (Iowa 1994); *Fields v. Jantec, Inc.*, 857 P.2d 95, 97-98 (Ore. 1993); *Vacco Industries, Inc. v. Van Den Berg*, 6 Cal. Rptr. 2d 602, 613 n. 20 (App. 1992). You don't buy immunity from suits for your torts by being a member of a business corporation *or* a member of a professional corporation.

So the differences between the two types of corporation are actually rather slight, maybe slighter than the differences between business corporations and limited liability companies. But these are details. The charm of *Coté*'s rule is that it avoids the need for judges to entangle themselves in functional inquiries into the differences among corporations. And it is a rule supported, maybe compelled, by *Carden*'s formalistic approach. Granted, had the effect of *Coté*'s flat rule been to induce states to rename sole proprietorships, mah jongg clubs, or pit bulls "corporations" in order to make them more (or would it be less?) suable in federal court, we would be in trouble; but we are relieved to note that no such tendency is discernible. It is because states are not using the label of "corporation" to game the diversity statute that the courts are comfortable deferring to the label the state places on a business entity. *Great Southern Fire Proof Hotel Co. v. Jones*, *supra*, illustrates the point. The "limited partnership association" involved in that case had many properties of a corporation, but because it wasn't called that in the Pennsylvania statute it was deemed not to be a corporation for purposes of the diversity jurisdiction. Cf. *Wild v. Subscription Plus, Inc.*, *supra*, 292 F.3d at 528-29; *Ripalda v. American Operations Corp.*, 977 F.2d 1464, 1468-69 (D.C. Cir. 1992).

The only situation in which a simple reference to state law will fail to resolve the issue of a party's citizenship is where

the party is foreign, for it is then necessary to determine whether the characteristics of the foreign entity are enough like those of a U.S. corporation to make "corporation" the correct translation into English. *Carden v. Arkoma Associates, supra*, 494 U.S. at 189-90; *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933); *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 582-83 (7th Cir. 2003). *Carden* describes this as "the one exception to the admirable consistency of our jurisprudence on this matter." 494 U.S. at 189. Cases involving U.S. entities are indeed consistent—in treating the state's label as determinative.

So there is federal jurisdiction of Hoagland's suit, and we can proceed at last to the merits of his appeal, which are slight. The district court determined after a bench trial that Hoagland's suit failed as a suit for legal malpractice. Hoagland doesn't disagree. A suit for legal malpractice under Illinois law, which governs the substantive issues in this case simply because the parties have assumed that it does, *Indiana Ins. Co. v. Pana Community Unit School District No. 8*, 314 F.3d 895, 900 (7th Cir. 2002); *Grundstad v. Ritt*, 166 F.3d 867, 870 (7th Cir. 1999); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991); *BBSerCo, Inc. v. Metrix Co.*, 324 F.3d 955, 960 n. 3 (8th Cir. 2003), requires (unless the lawyer's breach of duty is obvious even to a layperson, which is not contended) expert testimony regarding the standard of care or loyalty that the lawyer is alleged to have violated. *Barth v. Reagan*, 564 N.E.2d 1196, 1200-02 (Ill. App. 1990), and cases cited there; *Besco v. Henslee, Monek & Henslee*, 701 N.E.2d 1126, 1130 (Ill. App. 1998).

Hoagland presented no such testimony. His grievance is that he should have been allowed either to amend his complaint to make clear that his claim, which he believes the district judge misunderstood, is not malpractice but is rather breach of contract or alternatively breach of fiduciary duty, or

allowed to dismiss his suit without prejudice and start over. To bolster his contention that he is not proceeding on a malpractice theory he points out that he is seeking not common law damages but only the return of the attorneys' fees that Midwest paid the Sandberg firm. We think the judge understood Hoagland's case perfectly well and that Hoagland's attempt to change horses came too late, but in any event his current theory has no basis in Illinois law, so amending the complaint or dismissing the suit without prejudice wouldn't do him any good. *Widell v. Wolf*, 43 F.3d 1150, 1151 (7th Cir. 1994); *Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001).

The claim, in substance and without regard to how it might be characterized, is that the Sandberg law firm represented the adversaries—a corporation (Midwest) and its swindling president—in a derivative action and used its dual representation to prevent the corporation from recovering assets of which the president had wrongfully deprived the corporation; that the law firm had wrongfully accepted payment of its fees from the corporation (the client whose interests the firm had sacrificed); and that it should therefore be required to rebate ("disgorge") the fees to Hoagland for the benefit of the corporation. An attorney's throwing one client to the wolves to save the other is malpractice. *Rogers v. Robson, Masters, Ryan, Brumun & Belom*, 407 N.E.2d 47 (Ill. 1980); *Nagy v. Beckley*, 578 N.E.2d 1134, 1136-38 (Ill. App. 1991); *Barth v. Reagan*, *supra*, 564 N.E.2d at 1200-02; *Wissore v. Alvey*, 562 N.E.2d 978, 983-84 (Ill. App. 1990); *Tucek v. Grant*, 472 N.E.2d 563 (Ill. App. 1984); 1 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* § 1.1, p. 5 (5th ed. 2000); *Restatement (Third) of the Law Governing Lawyers* §§ 121 comment f, 131 and comment a (2000), whatever the plaintiff chooses to call it. *Brush v. Gilsdorf*, 783 N.E.2d 77 (Ill. App. 2002). He cannot be permitted, by recharacterizing the claim—whether by calling the conflict of interest a

breach of fiduciary obligation or by contending that his contract with the law firm contained an implied promise not to commit such conflicts—to get around the requirement of presenting expert testimony. That is the kind of formalist move that courts rightly reject. Illinois courts hold that "when a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the later claim should be dismissed as duplicative." *Fabricare Equipment Credit Corp. v. Bell, Boyd & Lloyd*, 767 N.E.2d 470, 476 (Ill. App. 2002); *Majumdar v. Lurie*, 653 N.E.2d 915, 920-21 (Ill. App. 1995); see also Meredith J. Duncan, "Legal Malpractice By Any Other Name: Why a Breach of Fiduciary Duty Claim Does Not Smell as Sweet," 34 *Wake Forest L. Rev.* 1137 (1999).

The fact that restitution was sought instead of conventional damages also does not alter the nature of the suit. Restitution is a remedy, at least when sought as here as reparations for a tort. 1 Dan B. Dobbs, *Dobbs Law of Remedies* § 4.1(3), p. 566 (2d ed. 1993); see also *Alaska Sales & Service, Inc. v. Millet*, 735 P.2d 743, 746 (Alaska 1987); *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App. 1992). It is often sought in lieu of damages. 1 Dobbs, *supra*, § 4.1(1), p. 553; for a pertinent example see *Stanley v. Brassfield, Cowan & Howard*, 504 N.E.2d 542 (Ill. App. 1987); see also 11 U.S.C. § 328(c) (authorizing forfeiture and disgorgement of fees if debtor's attorney has a conflict of interest); *Ingram v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 371 F.3d 950 (7th Cir. 2004) (per curiam). Asking for restitution doesn't change the cause of action.

AFFIRMED.

EASTERBROOK, *Circuit Judge*, concurring.  A curious conse-
quence of today's holding is that states define the meaning
of a federal statute—a jurisdictional statute, no less, one
designed to draw a boundary between state and federal
domains. My colleagues conclude that for purposes of 28
U.S.C. §1332(a) a "corporation" is any entity on which a
state bestows that label. Thus if a state renames a limited
liability company as a "limited liability corporation," it be-
comes a "citizen" with its own jurisdictional attributes, and
the citizenship of its members no longer matters. Contrast
*Cosgrove v. Bartolotta*, 150 F.3d 729 (7th Cir. 1998). So too if
a state renames a "limited partnership" a "limited partner-
ship corporation," or a "joint stock company" as a "joint
stock corporation."

Almost all corporations are created and defined by state
law, so states now hold the keys to federal jurisdiction. Thus
when in Texas lawyers organize as "professional corpora-
tions," while local politics dictated that groups of physicians
be "professional associations," the former becomes a citizen
while the latter is treated like a partnership under *Carden v.
Arkoma Associates*, 494 U.S. 185 (1990). And if lawyers in
Missouri may organize professional corporations, while
those on the other side of the Mississippi River in Illinois
must call themselves "limited liability partnerships," again
the states have admitted one to federal court while exclud-
ing the other. (These and more details about which states
use which labels may be found in Alan R. Bromberg & Larry
E. Ribstein, *Limited Liability Partnerships, the Revised Uniform
Partnership Act, and the Uniform Limited Partnership Act* (2003
ed.).)

My colleagues proceed as if state control over the scope of
federal jurisdiction were an inescapable result of Congress's
decision to treat corporations, but not other organizations,
as citizens. Then the only question is whether something is

a "corporation," and, as states devise and regulate corporations, see *Atherton v. FDIC*, 519 U.S. 213 (1997); *Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90 (1991), the jurisdictional effect of the label is a natural consequence. Yet Congress has not made such a decision. Sections 1332(a)(1) and (c)(1) taken together mean that corporations are citizens, but nothing in §1332 says that state rather than federal law identifies a "corporation." Section 1332 is a federal statute, after all. Its meaning also is a question of federal law. And if, as often is apt, federal law absorbs rules from state sources, the decision to do this also is one of federal law. See *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979). See also *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440 (2003) (using common-law rules of agency, not state nomenclature, to identify an "employer" for purposes of federal employment-discrimination law).

My colleagues have collected quite a few cases for the proposition that §1332 treats as a "corporation" any entity bearing that label as a matter of state law. With the exception of *Coté v. Wadel*, 796 F.2d 981 (7th Cir. 1986), and *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc.*, 710 F.2d 87 (2d Cir. 1983), however, these decisions fail to discuss (or even notice) the jurisdictional question. They therefore have not produced holdings on the subject. See *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 119 & n.29 (1984); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37-38 (1952); *Webster v. Fall*, 266 U.S. 507, 511 (1925).

The Supreme Court, which *has* addressed this question, treats taxonomy as a matter of federal law. *Great Southern Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900), is an example. It held that a joint stock company must be deemed a partnership rather than a corporation under §1332, even though the Constitution of Pennsylvania provided that "all joint stock companies or associations having any of the powers

or privileges of corporations not possessed by individuals or partnerships" were "corporations." See 177 U.S. at 456. Pennsylvania made joint stock companies, unlike normal partnerships, distinct entities that like corporations could sue and be sued in their own name; this made joint stock companies "corporations" as a matter of Pennsylvania law—but not, the Supreme Court held, as a matter of federal law, under which entity status "is not a sufficient reason for regarding it as a corporation within the jurisdictional rule heretofore adverted to." *Id.* at 457.

Although the Court did not say what attributes justify calling an entity a "corporation", *Great Southern Fire Proof Hotel* demonstrates that federal rather than state law supplies the rule of decision. The Court observed, 177 U.S. at 456-57, that state judges referred to joint stock companies (also called "limited partnership associations") as "quasi-corporations" under Pennsylvania law but did not explain what distinguishes a "quasi" corporation from a real one. If a joint stock company deserves a "quasi," why doesn't a professional corporation, which like a joint stock company differs in many ways from a firm chartered under a state's general corporate law?

Just as *Great Southern Fire Proof Hotel* holds that nomenclature is not sufficient to make an entity a "corporation" under §1332, so *Moor v. County of Alameda*, 411 U.S. 693, 717-21 (1973), holds that the name is unnecessary. The Court concluded in *Moor* that a municipality is a corporate "citizen" under §1332(a)(1) when it is a freestanding entity with the ability to incur and pay its own debts, and operate without (immediate) direction of the state that created it. This even though the entity was called a "county" rather than a "corporation."

Both *Great Southern Fire Proof Hotel* and *Moor* insist that an entity's legal attributes rather than its name identify a

"corporation." But *which* attributes? Entity status is insufficient, as is limited liability; limited partnerships combine these yet were held in *Carden* not to be "citizens." In *Moor* the Court emphasized that California's judiciary would issue mandamus to counties, which is proper only when the body is an "inferior tribunal, corporation, board, or person." So why was the County a "corporation" rather than an "inferior tribunal" or "board"? The Court did not say. The reasoning in *Moor* implies that the County's status as a juridical entity, able to sue and be sued in its own name, was enough; yet *Great Southern Fire Proof Hotel* and *Carden* hold that entity status is not the distinction between corporations and those organizations that are not treated as "citizens" under §1332(a)(1).

What about marketable stock, which has been used in securities law to distinguish firms subject to regulation from those outside it? See, e.g., *Marine Bank v. Weaver*, 455 U.S. 551 (1982); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837 (1975). A principal economic function of corporate organization is separation of ownership from control, so that entrepreneurs need not supply all the capital, and those who supply capital may diversify their investments and need not furnish managerial skills. Shareholders frequently change and must be ignored for jurisdictional purposes; only the entity continues. A professional corporation does not separate ownership from control even in principle, and it offers no opportunity for diversification either; a P.C. is scarcely different economically from a partnership. Each shareholder of a Missouri professional corporation must be a current employee licensed to provide the services in which the firm specializes, or another entity consisting solely of such persons. See Mo. Rev. Stat. §356.111. Yet Alameda County did not issue stock; the nature and negotiability of an entity's securities thus can't be the distinguishing feature of a corporation under federal law. Alameda County was a

governmental body, with legal attributes (other than entity status) utterly unlike those of a business corporation.

Indeed, no matter *what* feature one names as the potential dividing line, it is possible to find a decision of the Supreme Court on the other side. That makes life hard for an intermediate appellate court. We must choose between letting nomenclature control and trying vainly to identify which legal characteristics distinguish corporations from other entities. The former approach is wrong in principle, the latter untenable in practice.

Forced to choose between these options, I join the majority in thinking that it is better to let names control than to set off on a snipe hunt. *Carden*, the Court's most recent word, is essentially formal. A formal approach has at least the virtue of certainty, a desirable feature in a jurisdictional rule. It also produces consistency. Professional corporations were created to permit lawyers, physicians, accountants and others to set up firm-wide tax-advantaged pension plans at a time when federal law restricted that opportunity to corporations. States created entities with the corporate name but the functional features of a professional partnership. If that gimmick opens the door to federal tax benefits, why not to citizenship under §1332? (The federal rules for pensions were changed in 1992, which may explain why most professionals today opt for limited liability partnerships or other non-corporate forms of organization, but this does not affect the treatment of existing entities.) Either Congress or the Supreme Court can draw finer lines if a broad brush leaves states (and entrepreneurs) with too much discretion.

No. 03-2059 19

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*